UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES BECNEL ET AL                          CIVIL ACTION

VERSUS                                      NO. 19-14536

LAMORAK INSURANCE COMPANY ET AL             SECTION "B"(5)

## ORDER AND REASONS

Oral argument on defendant American Insurance Company's (AIC) opposed motions for summary judgment was received on Wednesday, June 8, 2022. (See Rec. Docs. 345, 346, 515, 530, 625, 633)

Considering argument from interested parties' counsel, the record, applicable law, and for orally assigned reasons given during today's hearing,

**IT IS HEREBY ORDERED** that AIC's motion for summary judgment based on an alleged Products Hazard Exclusion of the purported form policy (Rec. Doc. 345) is **DENIED without prejudice**; and

**IT IS FURTHER ORDERED** that AIC's motion for summary judgment based on lack of liability of AIC or Eagle during the applicable insurance policy issued by AIC to Eagle, i.e. July 1, 1965 to July 1, 1966 (Rec. Doc. 346) is **DENIED without prejudice.**

For purposes of its instant motions and with an unusual request, AIC asked the court to assume that it issued an insurance policy to Eagle for the July 1, 1965 to July 1, 1966 period. If plaintiffs later fail to meet their burden of establishing

1

existence of an AIC insurance policy, the court will *sua sponte* reconsider the foregoing orders.

I. **FACTS AND PROCEDURAL HISTORY**

Plaintiffs asserts claims against AIC as the alleged insurer of Eagle. They alleged that during the period of July 1, 1965, to July 1, 1966, when AIC insured Eagle, plaintiff James Becnel, now deceased, was exposed to asbestos products manufactured by Eagle while working at Avondale. Plaintiffs also asserted that Eagle sold, supplied, and/or distributed asbestos-containing products to Avondale. Additionally, plaintiffs alleged that Eagle exposed Mr. Becnel to asbestos when they performed contracting work at locations in close proximity to him.

On April 26, 2022, AIC filed the instant motions for summary judgment. It asserts plaintiffs' claims must be dismissed because the insurance policy issued to Eagle contained a Products Hazard Exclusion that precludes coverage. Rec. Doc. 345. Subsequently, plaintiffs filed a memorandum in opposition on May 17, 2022. Rec. Doc. 515. AIC filed a reply on May 26, 2022. Rec. Doc. 633.

Regarding the summary judgment motion based on lack of liability of Eagle during the July 1, 1965 to July 1, 1966 policy period, AIC argues that plaintiffs cannot present any evidence that the decedent was exposed to Eagle products at any site between the policy coverage period. Rec. Doc. 346. Subsequently,

plaintiffs filed a memorandum in opposition on May 17, 2022. Rec. Doc. 530. On that same date, Huntington Ingalls, Inc. filed an opposition to AIC's motion. Thereafter, AIC filed a reply on May 26, 2022. Rec. Doc. 625.

## II.  <u>LAW AND ANALYSIS</u>

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial,

the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

### B. The Products Hazard Exclusion

#### i.   The Unauthenticated Certificate of Insurance

It is undisputed that to date no party has found the alleged insurance policy. Only an unauthenticated certificate of insurance has been discovered. Plaintiffs point to the certificate of insurance, as well as several of Eagle's discovery responses to argue such evidence would constitute authentication of the certificate.

As the Court stated in *Hall v. Johnson*, No. 12-99, 2013 WL 870230 (M.D. La. Mar. 7, 2013):

> To be considered by the court, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.' ... A document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary judgment." *Hal Roach Studios, Inc.*

4

> *v. Richard Feiner and Co., Inc.*, 896 F.2d 1542 (9th Cir.
> 1989). *See also Martin v. John W. Stone Oil Distributor,
> Inc.*, 819 F.2d 547 (5th Cir. 1987) ( "Unsworn documents
> are ... not appropriate for consideration [on motion for
> summary judgment]"); *Moffett v. Jones County*, 2009 WL
> 1515119 (S.D. Miss., June 1, 2009) ("The records are not
> certified ... nor sworn in any way, thus they are
> inadmissible"); *Rizzuto v. Allstate Ins. Co.*, 2009 WL
> 1158677 (E.D. La., April 27, 2009) (same); 10A Charles
> Alan Wright, et al., Federal Practice & Procedure § 2722
> (3rd ed. 1998).

*See also Rizzuto v. Allstate Ins. Co.*, No. CIV.A. 07-4426, 2009 WL
1158677 (E.D. La. Apr. 27, 2009) (same).

Thus far, the certificate has not been authenticated by and
attached to an affidavit. *See Harvey v. Joyce*, No. 99-775, 2006 WL
197013, at *7 (E.D. La. Jan.25, 2006) ("[i]n order for a document
to be considered in support of or in opposition to a motion for
summary judgment, it must be authenticated by and attached to an
affidavit that meets the requirements of Rule 56(e) and the affiant
must be a person through whom the exhibits could be admitted into
evidence.") Nevertheless, because AIC requests us to assume that
a policy was issued for purposes of this motion, the court will
address the summary judgement motions at issue, subject to later
reconsideration.

ii.  Interpretation of the Products Hazard Exclusion

According to Louisiana law, an insurance policy is a contract
that constitutes the law between the parties, and it must be
interpreted in accordance with the general rules of contract
interpretation set forth in the Louisiana Civil Code. *See*

5

*Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La.2003); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007). The extent of insurance coverage is determined by the parties' intent as reflected by words in the policy. *See Richard v. Anadarko Petroleum Corp.*, 850 F.3d 701, 713 (5th Cir. 2017) (citing *Cadwallader*, 848 So.2d at 580). If the policy wording is clear, and it expresses the intent of the parties, the agreement must be enforced as written. *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014) (citing *Cadwallader*, 848 So.2d at 580); La. Civ. Code art. 2046; *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988). If an ambiguity exists, the ambiguity must be construed in favor of the party seeking coverage. *See Richard*, 850 F.3d at 714.

The insurer bears the burden of proving the applicability of an exclusionary clause within the policy. *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 357 (5th Cir. 2010). Additionally, the Fifth Circuit has recognized that "[w]hen an exclusion precludes coverage for injuries 'arising out of' described conduct, the exclusion is given a broad, general, and comprehensive interpretation. A claim need only bear an incidental relationship to the described conduct for the exclusion to apply." *Scottsdale Ins. Co. v. Texas Sec. Concepts and Investigation*, 173 F.3d 941, 943 (5th Cir.1999).

AIC argues that if it issued a policy to Eagle, the policy would have been a form "K" policy, which contains a Products Hazard exclusion. According to AIC, based on the language of the exclusion, plaintiffs' claims are precluded and must be dismissed as a matter of law. On the other hand, plaintiffs argue there is a genuine issue of material fact as to whether the alleged exclusion was part of the policy issued by AIC. Plaintiffs also argue that even assuming the policy contained the aforementioned exclusion, AIC's motion for summary judgment should nevertheless be denied because the alleged exclusion would not dismiss plaintiffs' failure to warn and contracting activity claims.

AIC cites no law to support application of a policy issued to a non-party as a basis for excluding plaintiffs' claims. Louisiana law considers an insurance policy as a contract that constitutes the law **between the parties**. *Graphia v. Balboa Ins. Co.*, 517 F. Supp. 2d 854, 856 (E.D. La. 2007) ("[u]nder Louisiana law, an insurance policy, like other contracts, is the law between the parties.") Here, the alleged insured, Eagle, is not party to the contract AIC attached as an exhibit to its motion. The exhibit is a policy and exclusion pertaining to an unidentified insured, presumably not Eagle. We cannot legally bind Eagle, and plaintiffs by extension, to the terms and exclusions in a policy to which they were not privy.

Moreover, even assuming the Court could enforce the exclusions illustrated in AIC's attached policy, there is a genuine issue of material fact as to whether the policy between AIC and Eagle contained a Products Hazard exclusion. AIC, as the alleged insurer seeking to enforce the exclusionary provision, bears the initial the burden of proof on this motion for summary judgment. *See Bayle*, 615 F.3d at 357. AIC points to the declaration of its expert, Richard Gain, a former underwriting director with Fireman's Fund Insurance Company. Rec. Doc. 345-6 (Declaration of Richard Gain). Gain swore that if a policy was issued to Eagle, it would have been a form "K" policy that contained a Policy Hazard exclusion, like the one AIC attached. Plaintiffs, however, rebut this opinion. Plaintiffs rely on the testimony of their expert, Larry Klein, who disputed the testimony of Gain. See Rec. Doc. 515-18 (Deposition of Larry Klein). Klein testified that in his opinion the policy AIC issued to Eagle would not have contained a products hazard exclusion. *Id.* at 74-78. Specifically, Klein stated that the mere fact that a box on the certificate of insurance was left blank does not thereby prove that the Eagle policy contained an endorsement, *i.e.*, the Products Hazard exclusion. *Id.*

The credibility and weight assigned to each expert's testimony is a function of the jury and may not be completed at this time in the summary judgment process. *See Hamel's Farm, L.L.C.*

*v. Muslow*, 988 So.2d 882, 890 (La.Ct.App.2008) (holding that the jury must decide credibility of expert testimony using the specific facts upon which the opinions are based and the professional qualifications of the expert); *Henson v. Odyssea Vessels, Inc.*, 2008 WL 449726, at *2 (E.D. La. Feb. 15, 2008) (stating that the plaintiff was "certainly correct that determining the credibility of witnesses is the province of a jury") (citing *United States v. Deville*, 278 F.3d 500, 506 (5th Cir. 2002); *United States v. Rasco*, 123 F.3d 222, 229 (5th Cir. 1997)). *See also Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (stating that "[c]redibility determinations, of course, fall within the jury's province" in relation to a challenge to expert testimony).

Because there exists a genuine issue of material fact as to whether the Eagle policy contained a Products Hazard exclusion, the Court need not address the remainder of AIC's argument that plaintiffs' claims are precluded under the alleged exclusion.

### C. AIC's Motion Based on Lack of Liability of Eagle, Inc. between July 1, 1965, and July 1, 1966

Under Louisiana law, in an asbestos exposure case, the claimant must show that (1) "he had significant exposure to the product complained of," and that (2) the exposure to the product "was a substantial factor in bringing about his injury." *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1091 (La. 2009); *Williams v. Taylor Seidenbach, Inc.*, No. 18-31159, 849 Fed.Appx. 440, 444

(5th Cir. Feb. 26, 2021). Louisiana courts have applied this test to require evidence linking a plaintiff's injury to a defendant's asbestos-containing product. *See, e.g., Vodanovich v. A.P. Green Indus., Inc.*, 2003-1079, p. 3 (La. App. 4 Cir. 3/3/04), 869 So. 2d 930, 932–33 (requiring plaintiff to "show ... that he was exposed to asbestos from the defendant's products); *Lucas v. Hopeman Bros., Inc.*, 2010-1037, p. 19 (La. App. 4 Cir. 2/16/11), 60 So. 3d 690, 702 (requiring evidence "specifically plac[ing] [the plaintiff] around asbestos fibers emanating from a product [Defendant] Reilly Benton sold and/or supplied to Avondale"). Thus, the plaintiff has the burden of proof and "must establish his claim to a reasonable certainty[;] mere possibility, and even unsupported probability, are not sufficient to support a judgment in plaintiff's favor." *Vodanovich v. A.P. Green Indus., Inc.*, 2003-1079, p. 6 (La. App. 4 Cir. 3/3/04), 869 So. 2d 930, 934. Even if the plaintiff was only exposed to asbestos for a "short period for an employer and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma." *Williams v. Boeing Co.*, 23 F.4th 507 (5th Cir. 2022) (quoting *Rando*, 16 so. 3d at 1091).

The Fifth Circuit has stated that to defeat an asbestos defendant's motion for summary judgment, a plaintiff need only show that a reasonable jury could conclude that it is more likely than not that he inhaled defendant's asbestos fibers, even if there

were only "slight exposures." *Williams v. Boeing Co.*, 23 F.4th 507 (5th Cir. 2022); *see also Held v. Avondale Indus., Inc.*, 95-1788, p. 5 (La. App. 4 Cir. 4/3/96), 672 So. 2d 1106, 1109. A claimant's evidence may be direct or circumstantial. *Rando*, 16 so. 3d at 1089. Circumstantial evidence "must exclude every other reasonable hypothesis with a fair amount of certainty," but need not "negate all other possible causes." *Id.* Moreover, "a plaintiff's burden of proof against multiple defendants in a long-latency case, such as a tort claim for mesothelioma, is not relaxed or reduced because of the degree of difficulty that might ensue in proving the contribution of each defendant's product to the plaintiff's injury." *Id.* at 1091.

AIC is sued in its capacity as an alleged insurer of Eagle, Inc. Although it ultimately denies issuing a policy to Eagle during Mr. Becnel's alleged exposure period, for purposes of this motion we will assume a policy was issued.[1] It is undisputed that AIC's purported coverage of Eagle under the alleged policy was from July 1, 1965, to July 1, 1966. Accordingly, that is the only period relevant to this motion.

1. Significant Exposure During the Policy Period

AIC argues that plaintiffs have not and cannot produce any evidence that Mr. Becnel was exposed to asbestos from Eagle's

---

[1] Neither Plaintiffs nor AIC's alleged insured have ever been able to produce a policy issued to Eagle by AIC for the period between July 1, 1965, and July 1, 1966. The only document that has been recovered is a Certificate of Insurance.

products during the above policy period, and therefore, all claims against it must be dismissed. Plaintiffs and Avondale oppose the motion.

An insurer is liable only for harmful exposures that occurred during the insurer's policy period with the alleged tortfeasor. *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1076 (La. 1992); *LeBlanc v. Texas Brine Co., L.L.C.*, 989 F.3d 359 (5th Cir. 2021) ("the concept of coverage at the time of exposure has been applied in cases involving long-latency diseases (*e.g.*, diseases from asbestos exposure) and long-term environmental damage (*e.g.*, hazardous-waste releases)"); *Cortez v. Lamorak Ins. Co.*, No. CV 20-2389, 2022 WL 1320429 (E.D. La. May 3, 2022). The Court must therefore determine whether plaintiffs have produced evidence that the decedent was exposed to Eagle's asbestos-containing products *during the pertinent coverage period*. Because plaintiffs have alleged the decedent was exposed to asbestos at two separate worksites, Avondale and Hooker Chemical, the court will take each location in turn.

Exposure at Avondale Shipyard

As to Avondale, it is undisputed that Mr. Becnel worked at the shipyard during the second, third, and fourth quarters of 1965, from March 12, 1965, until November 1, 1965. It is also undisputed that the only period pertinent to this claim against AIC is the

period that coincides with the alleged policy, July 1, 1965, to November 1, 1965.

In support of their claim that Mr. Becnel was exposed to asbestos products, plaintiffs point to the decedent's deposition testimony that he was exposed to asbestos while working in the living quarters and engine rooms of Lykes vessels. Rec. Doc. 530-4 (Perpetuation Deposition of James Becnel at pp. 32-35). Plaintiffs also cite part of the decedent's transcript stating that he worked in close proximity to "insulation people" and that the insulation products the insulators were using were manufactured by Eagle. *Id.* at pp. 32-37. Decedent also testified that he knew the insulation was manufactured by Eagle because he saw the same written on boxes. *Id.* at pp. 41-43. Plaintiffs also cite to the 2010 deposition of Joseph Trosclair, who worked for Avondale from 1964 until 1969. Rec. Doc. 530-9 (Deposition of Joseph Trosclair). Mr. Trosclair testified that that insulators at Avondale used asbestos-containing insulation from Eagle and that he saw Eagle's boxes aboard the Lykes vessels. *Id.* at pp. 35, 38, 41, 79-80, 47-48). Lastly, plaintiffs point to the 1983 deposition testimony of Burnette Bordelon, Avondale's Superintendent of insulation for over forty years beginning in the early 1940s. Rec. Doc. 530-10 (Deposition of Burnette Bordelon). Bordelon testified that Eagle was a supplier of insulation to Avondale and had been for the last thirty years. *Id.* at pp. 6-7, 14-15.

Avondale also opposed AIC's motion, citing several deposition transcripts. Rec. Doc. 506. Avondale points to the deposition testimony of the decedent, stating that he was exposed to Eagle's asbestos insulation products while he worked in the engine room of Lykes vessels. Rec. Doc. 506-3 (Perpetuation Deposition of James Becnel pp. 39, 41). Avondale also cites to the testimonies of several other Avondale employees including, Burnette Bordelon, Luther Dempster, and Jose Cochran. Rec. Docs. 506-5, 506-6, 506-7, 506-8. Dempster testified that during the time he worked at Avondale from 1956 to 1993, Eagle supplied "lots" of asbestos products. Rec. Doc. 506-6 (Deposition of Luther Dempster p. 44). Similarly, Cochran testified that he worked in Avondale's warehouse from 1964 through the 1980s, and he processed Eagle insulation products for use on the mainyard during his employment. Rec. Doc. 506-8 (Deposition of Jose Cochran pp. 41, 44-45, 176). Avondale also points to the 1995 testimony of Fred Schuber, Jr.,[2] who served as the President of Eagle from 1952 until his death in the 1970s. Rec. Doc. 506. Schuber testified that Eagle operated a fabrication shop wherein they fabricated asbestos products for sale to its customers, including Avondale. Rec. Doc. 506-4 (Deposition Fred Schuber at pp. 22, 44-45). Based on these cited

---

[2] This deposition transcript is from another asbestos case, *Bridges v. Avondale Industries, Inc.* (August 3, 1995).

14

depositions, plaintiffs and Avondale contend that the decedent was exposed to asbestos containing insulation supplied by Eagle.

AIC raises several evidentiary objections to the deposition testimony that plaintiffs and Avondale cite,[3] but the Court need not decide those issues. Additionally, AIC argues that plaintiffs have only provided evidence that Eagle boxes were present at Avondale and Hooker, nothing more.

First, AIC correctly points out with applicable case authority that the mere presence of a manufacturer's products at a worksite are insufficient to establish causation. However, as discussed *infra*, plaintiffs have provided sufficient evidence not only establishing that Eagle's products were on site at both Avondale and Hooker, but also that Mr. Becnel worked near both products while they were in use. Rec. Doc. 530. At Avondale, plaintiffs established that Mr. Becnel was exposed to Eagle products when he worked in the engine room of Lykes vessels alongside insulators who were reinsulating pipes with Eagle products. *Id.* Similarly, at Hooker, plaintiffs have shown that the decedent was exposed to Eagle products while he cut and removed asbestos from pipes. *Id.* Decedent also testified that sometimes he worked side by side with Eagle insulators. *Id.*

---

[3] Rec. Doc. 625.

Second, the evidentiary support plaintiffs and Avondale have provided demonstrates a genuine issue of fact as to the decedent's asbestos exposure during the pertinent four-month coverage period. The evidence certainly places Eagle products near the decedent and on the Lykes vessels, and the parties have pointed to evidence that Mr. Becnel's exposure at Avondale may have occurred between July 1, 1965, and November 1, 1965. Moreover, the evidence shows that during the time of Mr. Becnel's employment at Avondale (1) he saw Eagle's boxes on the Lykes vessels; (2) he worked near insulators who used asbestos containing Eagle insulation products, and (3) Eagle supplied asbestos containing isolation to Avondale in the 1960s and 70s.

Exposure at Hooker Chemical

As to Hooker, it is uncontested that the decedent worked for Gulf Engineering at the Hooker Chemical plant in the second and third quarters of 1966. The parties further agree that the only time pertinent to this motion is Mr. Becnel's work in the second quarter as that period is covered by the policy.

Plaintiffs rely on the several deposition testimonies of Mr. Becnel in which he stated that he was exposed to asbestos at Hooker while cutting and removing asbestos insulation from pipes. Rec. Doc. 530-4 (Perpetuation Deposition of James P. Becnel at pp. 52-54). Mr. Becnel also testified that he worked near Eagle insulators while at hooker. *Id.* at pp.54-57. Decedent stated that sometimes

16

they work on the side of him and other times the Eagle insulators would work above him. *Id.* Mr. Becnel also testified that he knew the insulators worked at Eagle because the image was on their hardhats and that the insulators used insulation from boxes marked with Eagle's name. *Id.* at pp. 671-72, 59.

Plaintiffs also rely on the deposition testimony of Ralph Manguno who testified that he used Pabco pipe covering while he worked at hooker. Rec. Doc. 530-6 (Deposition of Ralph Manguno at pp. 67-69, 124-25). Plaintiffs point to the deposition testimony of Thomas Flauherty, the corporate representative of Fibreboard Corporation. Rec. Doc. 530-7 (Deposition of Thomas Flauherty). Flauherty testified that Fibreboard manufactured the pabco pipe covering and that the covering contained asbestos until September 1971. Lastly, plaintiffs rely on the deposition testimony of Fred Schuber, who testified that beginning in 1952, Eagle "had an exclusive arrangement" with pabco. Rec. Doc. 530-8 (Deposition of Fred Schuber at pp. 119, 129-31).

Upon review, the court finds that plaintiffs have presented sufficient evidence that Eagle insulation products were used on site at Hooker, and the decedent had to cut and remove asbestos insulation from pipes. Plaintiffs also presented evidence that sometimes Mr. Becnel worked side by side with Eagle insulators. Given the evidence presented, and drawing all reasonable inferences in favor of plaintiffs, the Court finds that Mr.

17

Becnel's general asbestos exposure at Hooker creates an issue of fact as to AIC's liability as the alleged Eagle insurer.

    2. <u>Whether Exposure to the Eagle Product was a Substantial Factor in Bringing About Mr. Becnel's Lung Cancer.</u>

Turning to the second prong, plaintiffs have established a genuine issue of material fact as to whether Mr. Becnel's exposure at Avondale and Hooker was a contributing factor to his development of primary lung cancer. Plaintiffs point to the affidavit of Frank M. Parker, III, an industrial hygiene analyst, who concluded that Mr. Becnel was frequently exposed to significant concentrations of asbestos while employed at Avondale Shipyard in 1965, including exposure from Eagle insulation. Rec. Doc. 530-11. Parker also opined that Mr. Becnel was frequently exposed to significant concentrations of asbestos when he worked around Eagle insulators while employed at Hooker Chemical for Gulf Engineering. *Id.* He also testified that these exposures frequently exceeded contemporary occupational exposure limits, significantly increasing the decedent's likelihood of developing lung cancer. *Id.*

Likewise, plaintiffs point to the deposition testimony of their causation expert, Dr. Stephen Kraus, who concluded Mr. Becnel had significant occupational asbestos exposure from his work around insulators using Eagle insulation products, both at Avondale and Hooker Chemical. Rec. Doc. 530-12 (Affidavit of Dr.

Stephen Kraus). Dr. Kraus has also opined that Mr. Becnel's exposure to Eagle asbestos products and his work around Eagle insulators were significant contributing causes of his lung cancer. *Id.*

The above-cited depositions provide evidentiary support for the second prong of plaintiffs' asbestos exposure claim, *i.e.*, that the decedent's asbestos exposure was a substantial factor in bringing about his lung cancer. Accordingly, plaintiffs have established a genuine issue of material fact as to this claim

New Orleans, Louisiana this 8th day of June, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE