**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JAMES BECNEL ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-14536** |
| **LAMORAK INSURANCE COMPANY ET AL** | **SECTION "B"(5)** |

**ORDER AND REASONS**

Before the Court are defendant's motion for partial summary judgment on plaintiffs' allegations of intentional tort and alter ego liability (Rec. Doc. 361), plaintiffs' memorandum in opposition (Rec. doc. 540), and defendant's reply in support (Rec. Doc. 619). For the following reasons,

**IT IS ORDERED** that defendant's motion for partial summary judgment (Rec. Doc. 361) is **GRANTED in part**, dismissing plaintiffs' intentional tort claim, and **DENIED in part**, retaining plaintiffs' claim under the single business enterprise theory.

**I.   FACTS AND PROCEDURAL HISTORY**

This suit arises from alleged exposure to asbestos and asbestos-containing products on the premises of Avondale Shipyards in 1965. *See* Rec. Doc. 1. The plaintiff, James Becnel, was employed in various positions by or on the premises of Avondale Shipyards in 1965. Rec. Doc. 1-2 (Plaintiff's Petition). It was during this time that Plaintiff claims he was exposed to both asbestos and asbestos-containing products. *Id.*  Not only does the plaintiff claim to have been exposed to asbestos, but Mr. Becnel also asserts

1

that he carried asbestos home on his person, clothing, and other items. *Id.* Because of this alleged constant exposure, Mr. Becnel claims he contracted asbestos-related cancer and/or lung cancer, although the disease did not manifest itself until 2019. *Id.*

On July 22, 2019, Plaintiff filed suit in the Civil District Court for the Parish of Orleans against several defendants, including, but not limited to, Huntington Ingalls Inc. and Lamorak Insurance Co. (the "Avondale Interests") and Hopeman Brothers, Inc. ("Hopeman"). *Id.* In his Complaint, Plaintiff asserted several negligence claims against the defendants. Rec. Doc. 1-2. Against Defendant Avondale Interests, Plaintiff claimed that it failed to exercise reasonable care for the safety of persons on or around their property and failed to protect the plaintiff from unreasonably dangerous conditions. *Id.* Likewise, Plaintiff claimed that Hopeman was liable for manufacturer and vendor strict liability, intentional tort, and alter ego liability. *Id.* Plaintiff argued that because Hopeman was hired by his employer, Avondale Shipyard, to perform joiner services on newly constructed vessels at the yard, Hopeman is liable for exposing him to asbestos. *Id.*

On August 14, 2019, Mr. Becnel filed a First Supplemental and Amending Petition for Damages to add a defendant. *See* Rec. Doc. 1-3. On November 13, 2019, Mr. Becnel died from his asbestos-related lung cancer, complications therefrom, and/or complications from

2

treatment therefrom. *See* Rec. Doc. 1-4. At his death, Mr. Becnel was survived by his wife, Jacqueline Becnel, and his children, Sheila Becnel Eschete and James Becnel, Jr. *Id.*

On November 19, 2019, Mr. Becnel's heirs ("Plaintiffs") filed a Second Supplemental and Amending Petition for Damages substituting themselves as party plaintiffs. *Id.* In their petition, Plaintiffs asserted both survival and wrongful death claims, pleading that Mr. Becnel's asbestos-related lung cancer caused and/or contributed to his death. *Id.* Additionally, the plaintiffs asserted new strict liability claims against all named defendants. *Id.*

On April 26, 2022, defendant Hopeman filed the instant motion for partial summary judgment. Defendant asserts that plaintiffs' claims for intentional tort and alter ego liability must be dismissed because she cannot provide evidentiary support for all elements of her claims. Rec. Doc. 361. Subsequently, plaintiffs filed a memorandum in opposition to defendant's motion on May 17, 2022. Rec. Doc. 540. Defendant filed a reply in support of its motion on May 26, 2022. Rec. Doc. 619.

II. **LAW AND ANALYSIS**

**A. Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

3

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

4

### B. Whether Hopeman is Entitled to Summary Judgment on Plaintiffs' Intentional Tort Claim

Initially, plaintiffs claim that this Court should deny Hopeman's motion for summary judgment because such a motion is not appropriate on the issue of intent. Rec. Doc. 540. In support, plaintiffs cite several cases which state "summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice…." *Id.* According to plaintiffs, Hopeman's sole basis for summary judgment on the intentional tort claim is that plaintiffs cannot provide evidentiary support for the intent element. *Id.*

Although plaintiffs are correct that summary judgment is disfavored when issues of intent or state of mind are involved, plaintiffs fail to consider that this is a general rule. The rule does not preclude this Court from evaluating the merits of such a motion or granting summary judgment where elusive concepts such as motive or intent are at issue. *See Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 1984327, *9 (E.D. La. Apr. 27, 2020) (citing *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) ("This is not to say that the court can never enter summary judgment when intent or state of mind is at issue, only that the court must recognize that undermining the moving party's professed state of mind is not a simple task.")) But, the Fifth Circuit has cautioned that "the court must be vigilant to

draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party." *Dempster*, 2020 WL 1984327 at *9. Summary judgment may still be appropriate if the non-moving party merely rests on conclusory allegations or unsupported speculation. *Id.*

To prove an intentional tort, plaintiff must show that Hopeman either consciously desired that plaintiff contract primary lung cancer or knew that the result was substantially certain to follow from its conduct. *Zimko v. Am. Cyanamid*, 905 So. 2d 465, 475 (La. App. 4 Cir. 2005), *cert. denied*, 925 So. 2d 538 (2006). "Substantial certainty requires more than a reasonable probability that an injury will occur," and plaintiff must prove that his contracting lung cancer was "inevitable or incapable of failing." *Cortez v. Lamorak Ins. Co.*, No. CV 20-2389, 2022 WL 1001445, *11 (E.D. La. Apr. 4, 2022); *Reeves v. Structural Pres. Sys.*, 731 So. 2d 208, 213 (La. 1999). The "belie[f] that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of intentional tort, but instead falls within the range of negligent acts ..." *Reeves*, 731 So. 2d at 214; Dempster, 2020 WL 1984327 at *10 (quoting *Reeves*, 731 So. 2d at 214). To prove a claim for intentional tort, Plaintiffs would have to show that Hopeman's "conduct [went] beyond knowingly permitting a hazardous work condition to exist, ordering an employee to perform an extremely dangerous job, or willfully

6

failing to furnish a safe place to work ..." *Zimko*, 905 So. 2d at 477.

In its motion for summary judgment, Hopeman contends that plaintiffs' intentional tort claim must be dismissed because they cannot provide evidentiary support that it consciously desired to afflict Mr. Becnel with primary lung cancer or knew that his cancer was substantially certain to follow from its actions. Rec. Doc. 361. Plaintiffs do not agree. Rather, plaintiffs argue that they can present material facts that Hopeman can be found liable at trial for an intentional tort. Rec. Doc. 540. Plaintiffs did not address the first prong of the intentional tort analysis, *i.e.*, that Hopeman consciously desired Mr. Becnel contract primary lung cancer. Instead, they argue that Hopeman knew of the hazards of asbestos and Mr. Becnel's disease was substantially certain to occur.

Both parties have cited several recent cases from this Court in support of their claims including, *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. CIV.A. 11-1198, 2014 WL 906164 (E.D. La. Mar. 7, 2014), *Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 1984327 (E.D. La. Apr. 27, 2020), and *Cortez v. Lamorak Ins. Co.*, No. CV 20-2389, 2022 WL 1001445 (E.D. La. Apr. 4, 2022). Defendant cites to both *Vedros* and *Cortez* in support of its argument that this Court grant summary judgment given plaintiffs cannot present any evidence that it knew about the hazards of asbestos prior to

7

1965 or that it intended for Mr. Becnel to develop an asbestos-related disease. By contrast, plaintiffs rely on *Dempster* to support their contention that the court should deny summary judgment because the key determination is Hopeman's intent, and such a question should be presented to the jury. *See Dempster*, 2020 WL 1984327 at *10 (stating that "the Court cannot determine at the summary judgment stage whether Avondale was substantially certain that Decedent would contract lung cancer based on its conduct.")

In *Vedros*, Judge Carl Barbier dismissed a similar intentional tort claim on defendant Avondale's motion for summary judgment. 2014 WL 906164 at *3. Plaintiffs in that case attempted to establish that Vedros's mesothelioma was caused by exposure to asbestos as a result of a dangerous working environment at Avondale, and to show that Avondale committed an intentional tort. *Id.* However, in response to Avondale's motion, plaintiffs only submitted evidence that defendant was aware of the asbestos risk at Avondale and that Defendants failed to remedy the unsafe working conditions despite their knowledge of the risks. *Id.* This court found that "[e]ven considering the facts in the light most favorable to Plaintiffs and assuming that Defendants were aware that there was a major risk, or even a probability, that [decedent] would contract mesothelioma," plaintiffs had not submitted evidence permitting a reasonable jury to conclude that the decedent's illness was

8

"inevitable or incapable of failing" *Id.* Thus, the Court granted summary judgment in favor of Avondale. *Id.*

Likewise, *in Cortez*, this Court granted Avondale's motion for summary judgment in part, dismissing the plaintiff's intentional tort claims. 2022 WL 1001445 at *12. The plaintiff in that case also attempted to allege Avondale was liable for an intentional tort because the plaintiff's mesothelioma was substantially certain to occur from Avondale's conduct. *Id.* On review, the court found the plaintiff's evidence lacking. *Id.* Like *Vedros*, the plaintiff in this case only generally asserted that the defendant "knew that asbestos was a health hazard," that it "caused fatal lung disease," and that it "had problems with it." *Id.* The plaintiff also pointed to Avondale's attempts to clean up the yard before inspections. *Id.* However, the Court found that such evidence was not enough to suggest Avondale intended to harm him, or that his mesothelioma was "inevitable or incapable of failing." *Cortez*, 2022 WL 1001445 at *12. Instead, the evidence only showed that the defendant knew of the dangers of asbestos and did nothing to rectify the working conditions. *Id.*

Here, like the plaintiff *Cortez*, the evidence plaintiffs present in this case fall far short of what is necessary to raise a material issue for an intentional-tort claim. Plaintiffs rely on Mr. Becnel's deposition testimony stating that Hopeman exposed him to asbestos when its workers would cut and fit boards aboard the

9

Lykes vessels on Avondale's yard. Rec. Doc. 540. Plaintiffs also point to the deposition testimony of Bertram Hopeman and a memo of his dated November 11, 1965. *Id.* Both Mr. Hopeman's testimony and memo show that he knew in 1965 that the asbestos dust generated from the sawing of his company's boards was dangerous and steps needed to be taken to protect workers. *Id.* Additionally, plaintiffs point to various exhibits suggesting that defendant took steps to conceal the hazards of asbestos from its workers by removing asbestos warning labels from its products. *Id.* But a defendant's "mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing. *Cortez*, 2022 WL 1001445 at *12.

Moreover, such evidence is not enough for this court to deny summary judgment. *Cortez*, 2022 WL 1001445 at *11. ("it is not sufficient for plaintiff to show that [defendant] had knowledge that its practices were dangerous and created a high probability that someone would eventually be injured.") Plaintiffs have not submitted any evidence suggesting that Hopeman consciously intended to harm Mr. Becnel, or that his primary lung cancer was "inevitable or incapable of failing." Thus, even considering the facts in the light most favorable to plaintiffs and assuming that Hopeman was aware that the asbestos dust generated from the sawing of its boards was dangerous and it should have used precautionary measures, plaintiffs have failed to bring sufficient evidence

10

whereby a reasonable jury could conclude that Mr. Becnel's contracting of primary lung cancer was "inevitable or incapable of failing" and was thus substantially certain to result from defendants' conduct. For these reasons, the court finds plaintiffs intentional tort claim should be dismissed.

### C. Whether Hopeman is Entitled to Summary Judgment on Plaintiffs' Alter Ego claim

Upon reviewing the parties' briefs and the relevant caselaw, the Court has determined that the parties have articulated and analyzed two utterly different theories of liability. In its motion for summary judgment, Hopeman addressed plaintiffs' alter ego claim by applying a five-factor test utilized to determine the alter ego liability of *shareholders*. By contrast, plaintiffs analyzed their alter ego claim under another veil piercing theory, single business enterprise. While both theories are employed to pierce the corporate veil, one is distinctly used to hold shareholders liable, while the other is used to find affiliate corporations liable. *See Aker Sols., Inc. v. Shamrock Energy Sols., LLC*, No. CV 16-2560, 2016 WL 4529828 (E.D. La. Aug. 30, 2016) (analyzing both theories separately and applying two distinct sets of factors). Considering these differing standards, the Court will separately analyze both theories.

11

1. <u>Alter Ego Liability</u>

As a general rule, corporations are distinct legal entities separate from the individuals who comprise them, and shareholders are not liable for corporate debts. *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1167 (La. 1991). In limited circumstances, however, a court may ignore the corporate fiction and hold individual *shareholders* liable where the corporation is found to simply be the alter ego of the shareholder. *Id.* To prove alter ego liability, a plaintiff must "prov[e] that the shareholders disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves." *Id.*; *see also In re Areno*, 615 B.R. 449, 455 (Bankr. W.D. La. 2020); *Aker Sols., Inc. v. Shamrock Energy Sols., LLC,* No. CV 16-2560, 2016 WL 4529828 (E.D. La. Aug. 30, 2016).

Courts within this jurisdiction have delineated several factors relevant to this alter ego analysis, including: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings. *ORX Res., Inc. v. MBW Expl., L.L.C.*, 2009-0662 (La. App. 4 Cir. 2/10/10), 32 So. 3d 931, 936, *writ denied*, 2010-0530 (La. 5/7/10), 34 So. 3d 862;

*Walker v. Dupart*, No. 20-3425, 2022 WL 500482, *7 (E.D. La. Feb. 18, 2022).

In this case, Hopeman contends that when applying the five-factor test, *supra*, plaintiffs cannot provide evidentiary support for any factor. In response, plaintiffs did not apply their evidentiary support to the factors articulated by Hopeman; instead, they analyzed the factors determinative to a single business enterprise theory of liability, discussed *infra*. The Court finds that plaintiffs are correct in their application of those factors, and the alter ego factors argued by defendant are not appropriate in this case.

At all times relevant to this litigation, plaintiffs have alleged that Hopeman is an alter ego of Wayne. In essence, they are seeking to hold one corporation (Hopeman) liable for the actions of another affiliated corporation (Wayne). This is precisely what the single business enterprise theory is designed to accomplish. *See Aker Sols., Inc. v. Shamrock Energy Sols*., LLC, No. CV 16-2560, 2016 WL 4529828 (E.D. La. Aug. 30, 2016) ("If, however, a group of affiliated corporations constitutes a single business enterprise, "a court may disregard the concept of corporate separateness and extend liability to each of the affiliated corporations for the purpose of preventing fraud or achieving equity.")

While the single business enterprise theory seeks to hold an affiliated corporation liable, the alter ego doctrine defendant cites is applied to hold officers, directors, or shareholders of a corporation liable. *See Andretti Sports Mktg. Louisiana, LLC v. Nola Motorsports Host Comm., Inc.*, 147 F. Supp. 3d 537, 563 (E.D. La. 2015). Because plaintiffs are seeking to do the former, the single business enterprise theory is applicable to this matter.

2. Single Business Enterprise

When a group of affiliated corporations constitutes a single business enterprise, a court may "disregard the concept of corporate separateness and extend liability to each of the affiliated corporations" for the purpose of preventing fraud or achieving equity. *Lee v. Clinical Research Ctr.*, 04-0428 (La.App. 4th Cir.11/17/04), 889 So.2d 317, 323; *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 335 (5th Cir. 2007). This theory of veil piercing is called the "single business entity," and it occurs when a corporation is found to be the "alter ego, agent, tool or instrumentality of another corporation." *Dishon v. Ponthie*, 918 So. 2d 1132, 1135 (La. App. 3 Cir. 2005), *writ denied*, 927 So. 2d 317 (La. 2006) (quoting *Green v. Champion Insurance Co.*, 577 So.2d 249 (La. App. 1 Cir.), *writ denied*, 580 So. 2d 668 (La. 1991)).

In *Green v. Champion Insurance Co.*, Louisiana's First Circuit Court of Appeal listed eighteen factors that courts could consider when determining whether a single business enterprise had been

14

formed. 577 So. 2d 249, 257–58 (La. Ct. App.), *writ denied*, 580 So. 2d 668 (La. 1991); *see also Walker v. Dupart*, No. 20-3425, 2022 WL 500482 (E.D. La. Feb. 18, 2022) ("Louisiana courts consider a non-exhaustive list of eighteen factors, none of which is dispositive, to determine whether a single business entity exists.")

These *Green* factors include:

1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
2. common directors or officers;
3. unified administrative control of corporations whose business functions are similar or supplementary;
4. directors and officers of one corporation act independently in the interest of that corporation;
5. corporation financing another corporation;
6. inadequate capitalization ("thin incorporation");
7. corporation causing the incorporation of another affiliated corporation;
8. corporation paying the salaries and other expenses or losses of another corporation;
9. receiving no business other than that given to it by its affiliated corporations;

10. corporation using the property of another corporation as its own;

11. noncompliance with corporate formalities;

12. common employees;

13. services rendered by the employees of one corporation on behalf of another corporation;

14. common offices;

15. centralized accounting;

16. undocumented transfers of funds between corporations;

17. unclear allocation of profits and losses between corporations; and

18. excessive fragmentation of a single enterprise into separate corporations.

*Green v. Champion Ins. Co.*, 577 So. 2d 249, 257–58 (La. App. 1 Cir. 1991), *writ denied*, 580 So. 2d 668 (La. 1991); *see also Lee v. Clinical Research Center of Fl*a., 889 So. 2d 317, 322 (La App. 4 Cir. 2004).

This list is neither illustrative nor exhaustive. *Green*, 577 So. 2d at 258. Furthermore, this Court need not find evidence of all factors in order to find single business enterprises exist. *See E.g.*, *Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of Louisiana*, 690 F. Supp. 2d 435, 448 (E.D. La. 2010) ("In sum, many of the *Green* factors are present in this case and on the whole, the evidence demonstrates that [the two companies] are not

16

operated as distinct entities despite their separate incorporation."); *Cargill, Inc. v. Clark*, No. 14-00233-BAJ-SCR, 2015 WL 4715010, at *12 (M.D. La. Aug. 7, 2015).

Here, the Court finds there are genuine issues of material fact as to whether Hopeman is an alter ego of Wayne. Plaintiffs have submitted several exhibits, including the deposition testimonies of Mr. John Baker and Mr. Bertram Hopeman. These exhibits provide evidentiary support for several of the *Green* factors, *supra*. For example, plaintiffs point to the deposition of John Baker wherein he testifies that Wayne was a wholly owned subsidiary of Hopeman during the relevant period, both corporations shared common officers, both companies shared the same address for a time, and Hopeman supplied Wayne's business. Rec. Doc. 540-17 (Deposition of John Baker at pp. 78-80, 84); Rec. Doc. 540-18 (Deposition of John Baker at pp. 16-22). Because no one *Green* factor is dispositive, and this Court cannot weigh evidence on this motion, we cannot determine at the summary judgment stage whether as a matter of law Hopeman is an alter ego of Wayne. *See Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of Louisiana*, 690 F. Supp. 2d 435 (E.D. La. 2010) (stating no one *Green* factor is dispositive); *Williams v. City of Port Arthur*, No. 120CV00527MJTZJH, 2022 WL 1183293 (E.D. Tex. Feb. 25, 2022), *report and recommendation adopted*, No. 1:20-CV-00527, 2022 WL 866407 (E.D. Tex. Mar. 23, 2022) ("[T]he court ... may not make

credibility determinations or weigh the evidence.")  Thus, it is for a reasonable jury to decide.

 New Orleans, Louisiana this 8th day of June, 2022

               _____
               SENIOR UNITED STATES DISTRICT JUDGE