UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES BECNEL ET AL                          CIVIL ACTION

VERSUS                                       NO. 19-14536

LAMORAK INSURANCE COMPANY ET AL              SECTION "B"(5)

ORDER AND REASONS

Before the Court are two motions for summary judgment. The first motion was filed by Huntington Ingalls Incorporated ("Avondale") (Rec. Doc. 428). Plaintiffs submitted an opposition to defendant's motion (Rec. Doc. 552), and defendant Bayer CropScience, Inc. ("Amchem") filed an opposition (Rec. Doc. 545). Thereafter, Avondale filed a reply in support of its motion (Rec. Doc. 567). The second motion for summary judgment was filed by defendants Certain London Market Insurers ("Lloyds"), as alleged insurers of Avondale (Rec. Doc. 366). Plaintiffs filed an opposition to Lloyds' motion (Rec. Doc. 519), and Lloyds filed a reply in support (Rec. Doc. 571). For the following reasons,

**IT IS ORDERED** that defendant Huntington Ingalls Inc.'s motion for summary judgment (Rec. Doc. 428) is **GRANTED; and**

**IT IS FURTHER ORDERED** that defendants Certain London Market Insurers' motion for summary judgment (Rec. Doc. 366) is **GRANTED.**

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This suit arises from alleged exposure to asbestos and asbestos-containing products on the premises of Avondale Shipyards

1

in 1965. *See* Rec. Doc. 1. The plaintiff, James Becnel, was employed in various positions by or on the premises of Avondale Shipyards in 1965. Rec. Doc. 1-2 (Plaintiff's Petition).  It was during this time that Plaintiff claims he was exposed to both asbestos and asbestos-containing products. *Id.*  Not only does the plaintiff claim to have been exposed to asbestos, but Mr. Becnel also asserts that he carried asbestos home on his person, clothing, and other items. *Id.* Because of this alleged constant exposure, Mr. Becnel claims he contracted asbestos-related cancer and/or lung cancer, although the disease did not manifest itself until 2019. *Id.*

On April 28, 2022, Avondale filed the instant motion for summary judgment, seeking dismissal of plaintiffs' state law tort claims. Rec. Doc. 428. Defendant alleged that all such claims are preempted by the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. 901, *et seq. Id.* Plaintiffs filed an opposition to Avondale's motion on May 18, 2022. Rec. Doc. 552. Avondale's motion was also opposed by defendant Bayer CropScrience, Inc. *See* Rec. Doc. 545. On May 24, 2022, Avondale filed a reply in support of its motion. Rec. Doc. 567.

Defendants Certain London Market Insurers ("Lloyds"), as alleged insurers of Avondale, filed a motion for summary judgment for the same reasons set forth in Avondale's motion. Rec. Doc. 366. On April 28, 2022, defendant Louisiana Insurance Guaranty Association ("LIGA"), as the alleged statutory obligor for

policies of insurance issued by Lamorak Insurance Company as alleged insurer of the Avondale executive officers, joined and adopted the motion filed by Lloyds. On May 17, 2022, plaintiffs filed an opposition to Lloyds' motion. Rec. Doc. 519. Defendant filed a reply in support of its motion on May 24, 2022. Rec. Doc. 571.

## II.   <u>LAW AND ANALYSIS</u>

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323.

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

### B. Preemption of Plaintiffs' State Law Claims Arising out of Decedent's Employment

Avondale, Lloyds, and LIGA assert that plaintiffs' state-law tort claims are preempted by the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq*. Several sections of this Court have thoroughly analyzed arguments such as these and held that the LHWCA preempts a plaintiff's occupational exposure claims against his employer. *See, e.g.*, *Morales v. Anco Insulations Inc.*, No. CV 20-996, 2022 WL 1405133 (E.D. La. May 4, 2022); *Sentilles v. Huntington Ingalls Inc.*, No. 21-958, 2022 WL 1211429 (E.D. La. Apr. 25, 2022); *Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 WL 1001445 (E.D. La. Apr. 4, 2022); *Barrosse v. Huntington Ingalls, Inc*., No. 20-2042, 2021 WL 4355415 (E.D. La.

Sept. 24, 2021*); Krutz v. Huntingon Ingalls, Inc.*, No. 20-1722, 2021 WL 5893981 (E.D. La. Apr. 22, 2021). Considering this line of caselaw, along with the briefs submitted by Avondale, plaintiffs, and Lloyds, this Court finds its prior analyses on the present issue on point. Therefore, we largely reiterate our prior analyses on this point.

### C. Coverage Under the LHWCA

The LHWCA is a federal workers' compensation statute providing covered maritime workers with "medical, disability, and survivor benefits for work-related injuries and death." *MMR Constructors, Inc. v. Dir., Office of Workers' Comp. Programs*, 954 F.3d 259, 262 (5th Cir. 2020). Before 1972, the statute covered only workers on "navigable waters of the United States (including any dry dock)." *Id.* (citing 33 U.S.C. § 903(a) (pre-1972)). However, in 1972, Congress amended the Act and "extend[ed] the LHWCA landward." *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 719, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980).

### i. Applicable Version of the LHWCA

Defendants assert that the Court should apply the version of the LHWCA in effect on the date the decedent was injured, or rather, at the time his injury manifested. Rec. Doc. 428. Plaintiffs, however, assert that the version of the LHWCA in effect at the time of his exposure is applicable. Rec. Doc. 552.

To determine which version of the LHWCA is applicable, courts look to the "date of injury." *Morales v. Anco Insulations Inc.*, No. CV 20-996, 2022 WL 1405133 (E.D. La. May 4, 2022) (citing *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1029 (5th Cir. 1985)). In the context of long-latency diseases arising from asbestos exposure, the Fifth Circuit has held that manifestation, not exposure, determines the date of injury. *Castorina*, 758 F.2d at 1031. For example, in *Castorina*, plaintiff's disease, asbestosis, manifested in 1979. *Id.* at 1028. His exposures, however, occurred between 1965 and 1972. *Id.* at 1027. The Fifth Circuit looked to judicial authority stating that the LHWCA "is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests itself." *Id.* (quoting *Grain Handling Co. v. Sweeney*, 102 F.2d 464 (2d Cir.), *cert. denied*, 308 U.S. 570 (1939)). The Court also inferred Congress's intent from its express adoption of the manifestation rule in 1984. *Id.* (citing Pub. L. No. 98-426, § 28(g)(1), 98 Stat. 1639 (1984)).

Here, Mr. Becnel's lung cancer manifested itself on March 28, 2019, the day he was diagnosed. Because *Castorina*'s manifestation rule controls, the Court applies the LHWCA as it existed in 2019, when his lung cancer manifested. *See Cortez v. Lamorak Ins. Co.*, No. CV 20-2389, 2022 WL 1001445, *5 (E.D. La. Apr. 4, 2022); *Morales v. Anco Insulations Inc.*, No. CV 20-996, 2022 WL 1405133 (E.D. La. May 4, 2022) ("Under *Castorina* and the 1984 amendments,

[plaintiff's] injury is deemed to arise on the date it manifested.").

 ii.  "Status" and "Situs" Requirements

The LHWCA covers injuries of workers who meet the Act's "status" and "situs" requirements. *See New Orleans Depot Servs. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 389 (5th Cir. 2013). Avondale contends that the decedent met both requirements.

The "status" requirement limits application of the LHWCA to "traditional maritime occupations." *Id.*; *see* 33 U.S.C. § 902(3) (defining "employee" as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker"). The status test is satisfied when the person is "directly involved in an ongoing shipbuilding operation." *Ingalls Shipbuilding Corp. v. Morgan*, 551 F.2d 61, 62 (5th Cir. 1977).

It is undisputed that Mr. Becnel worked as a tacker and shipfitter on vessels, including ships and barges, being constructed and/or repaired at Avondale's mainyard and the Napoleon Avenue Wharf. Avondale also points to the deposition testimony of the decedent to support this fact. Rec. Doc. 428 at 7. Mr. Becnel also testified that he worked in the engine rooms and living quarters of vessels, contributing to the shipbuilding

7

and repair process. Rec. Doc. 428-6 (Deposition of James Becnel at pg. 511-15). Additionally, the decedent testified that he worked on scaffold outside of the ship. *Id.*

Considering this evidentiary support, the Court finds that the decedent's work as a tacker and shipfitter on vessels at Avondale satisfies the status test because he performed an "essential step of the shipbuilding process." *See Morales v. Anco Insulations Inc.,* No. CV 20-996, 2022 WL 1405133 (E.D. La. May 4, 2022) (finding plaintiff satisfied the status requirement because he worked as a tacker at Avondale); *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 289 (5th Cir. 2008) (stating that the LHWCA applies to "longshoremen, shipbuilders, ship repairers, and various harbor workers, such as carpenters, cleaners, or painters"); 1 Robert Force and Martin J. Norris, The Law of Maritime Personal Injuries § 3:9 (5th ed.) (stating that the LHWCA specifically includes "any harborworker," which includes "shipcleaners, tank cleaners, riggers, carpenters, ship ceilers, cargo checkers, cargo weighers, cargo talleyers, port watchmen, electricians, painters, mechanics, etc."). Thus, the Court finds that the LHWCA's status test is satisfied.

The "situs" test requires that the injury occur on the "navigable waters of the United States" and "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading,

unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a); *see also Sun Ship, Inc.*, 447 U.S. at 719 ("In 1972, Congress ... extend[ed] the LHWCA landward beyond the shoreline of the navigable waters of the United States.").

Mr. Becnel's asbestos exposure allegedly occurred on and around vessels being built or repaired at Avondale Shipyard. Specifically, Avondale submits that its various facilities were all situated adjacent to the Mississippi river, a navigable waterbody of the United States of America. Defendant also points to the deposition testimony of Mr. Becnel in which he states that his alleged asbestos exposure occurred *after* the vessels were launched into the Mississippi river. Rec. Doc. 428-6 (Deposition of James Becnel at pg. 502-03). Accordingly, the Court finds that the decedent's alleged asbestos exposure occurred in a covered situs. *See Pitre v. Huntington Ingalls, Inc.*, No. 17-7029, 2018 WL 2010026, at *3 (E.D. La. Apr. 30, 2018) ("Avondale's vessel construction and repair activities occurred on the west bank of the Mississippi River adjacent to navigable waters.").

Because Mr. Becnel's status fell within the coverage of the LHWCA, and his injuries occurred on a covered situs, the Court finds that plaintiffs could have brought their claims under the LHWCA.

### iii.   Preemption of Tort Claims Against Avondale, its Executive Officers, and their insurers

Section 905(a) of the LHWCA, the employer immunity provision, states:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death ....

33 U.S.C. § 905(a). The Act also provides the exclusive remedy for injuries caused by the negligence or wrongful act of an officer or employee of the employer. 33 U.S.C. 933(i).

Further, the Fifth Circuit has "held that the LHWCA impliedly grants the employer's insurance carrier, and the insurance carrier of co-employees, the same immunity which it grants the employer and co-employees." *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 811 (5th Cir. 1988) (citing *Johnson v. American Mutual Liability Ins. Co.*, 559 F.2d 382 (5th Cir. 1977)). The LHWCA does not specifically immunize insurers. *See* 33 U.S.C. §§ 905(a), 933(i). Nevertheless, the Fifth Circuit has explained that "numerous provisions of the Act and the spirit of the Act as a whole, [which] equat[e] the insurer with the employer, negate any intent to hold the insurer liable to suit for damages as a third person." *Johnson*, 559 F.2d at 388 & n.10 (citing 33 U.S.C. §§ 905(a), 917(a), 928, 932(a), 933, 935, 936 and 941).

10

Plaintiffs' claims against Avondale and its executive officers, as well as their claims against Lloyds and LIGA (as alleged statutory obligor for policies issued by Lamorak Insurance Company) in their capacity as alleged insurers, are covered by these provisions. Accordingly, the Court must determine whether the LHWCA's exclusivity provision has preemptive effect over plaintiffs' state law tort claims against these parties.

Federal law applies to questions of preemption. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 (5th Cir. 1995). Federal law can preempt state law in three ways: (1) express preemption, where Congress expresses an explicit intent to preempt state law; (2) field preemption, where the "sheer comprehensiveness" of the federal scheme implies congressional intent to preempt state regulation in the area; or (3) conflict preemption, where the state law either directly conflicts with the federal law or interferes with the regulatory program established by Congress. *Id.* The U.S. Supreme Court has set out "two cornerstones" of preemption jurisprudence. *Wyeth v. Levine*, 555 U.S. 555, 565, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). First, the "ultimate touchstone" is "the purpose of Congress." *Id.* (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). Second, the Court must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress,"

11

especially when the case involves a "field which the states have traditionally occupied." *Id.* (quoting *Lohr*, 518 U.S. at 485, 116 S.Ct. 2240).

Because tort law is a field traditionally occupied by the States, the Court starts with the assumption that Congress did not intend to supersede state law when it enacted the LHWCA. But this assumption does not stand in face of the text of the LHWCA, the purpose behind the statute, and the weight of judicial authority.

Section 905(a) of the LHWCA provides that compensation under the LHWCA is exclusive of all other employer liability, including for actions to recover damages at law. 33 U.S.C. § 905(a). The plain language of this provision "evidences an unmistakable intention to embody the *quid pro quo* that defines most workmen's compensation statutes." *Cobb v. Sipco Servs. & Marine, Inc.*, No. CIV. A. 95-2131, 1997 WL 159491, *7 (E.D. La. Mar. 27, 1997) (citing *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 950 (3d Cir. 1990)). Specifically, the employee gets the benefit of no-fault compensation, and the employer enjoys immunity from tort liability for damages. *Id.* The Supreme Court recognized this exchange when it explained:

> [T]he [LHWCA is] not a simple remedial statute intended for the benefit of the workers. Rather, it was designed to strike a balance between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other. Employers relinquish their defenses to tort actions in exchange for limited and predictable liability. Employees accepted the limited

> recovery because they receive prompt relief without the
> expense, uncertainty, and delay that tort actions
> entail.

*Morrison-Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 636 (1983). Allowing state-law tort claims against employers would contradict the text of the statute and would frustrate the Act's purpose by undermining the *quid pro quo*.

Indeed, several courts have recognized as much. The Fifth Circuit held in *Rosetti v. Avondale Shipyards, Inc.*, that the LHWCA bars a "state law negligence claim," because "[u]nder the LHWCA, workers compensation is the exclusive remedy for an injured employee against his employer." 821 F.2d 1083, 1085 (5th Cir. 1987). Further, in *Hetzel v. Bethlehem Steel Corp.*, the Fifth Circuit found that "[p]reemption of [a] state [tort] act is required to avoid frustration of the policies and purpose behind the LHWCA." F.3d at 366-67 (5th Cir. 1995). In *Hetzel*, the court reasoned that "[c]ongressional policy would be frustrated if an injured worker were allowed to collect benefits under the Act, and then sue his employer under a state statutory tort theory." *Id.* Similarly, the Third Circuit in *Peter v. Hess Oil Virgin Islands Corp.*, concluded that "§ 905(a) [of the LHWCA] and the Supremacy Clause bar the Virgin Islands from imposing negligence liability on [a covered employer.]" 903 F.3d at 953. The *Peter* court specifically noted that Congress "intended that compensation, not tort damages, [was] to be the primary source of relief for

workplace injuries for longshoremen against their employers." *Id.* at 952.

Moreover, this Court has held, in six separate cases, that the LHWCA preempts a state tort claim. *See Sentilles*, 2022 WL 1211429, at *1; *Cortez*, 2022 WL 1001445, at *14-18; *Krutz*, 2021 WL 5893981, at *7; *Barrosse*, 2021 WL 4355415, at *10-11; *Hulin v. Huntington Ingalls, Inc.,* No. CV 20-924, 2020 WL 6059645, *7 (E.D. La. Oct. 14, 2020); *Cobb*, 1997 WL 159491, at *8 ("[A]pplication of Louisiana tort law, which plaintiff concedes is not a workmen's compensation remedy, does not further the availability of no-fault compensation, and it obstructs the purposes of the LHWCA.").

Because permitting plaintiffs' state law tort claims would obstruct the purposes of the LHWCA, the Court finds that these claims against Avondale, its executive officers, and their alleged insurers are preempted and must be dismissed. *See Krutz*, 2021 WL 5893981, at *8-9 (finding that the LHWCA preempts plaintiffs' negligence claims against his employer, co-employee, and several of his employers' insurance companies); *Morales*, 2022 WL 1405133 at *7 (finding that the LHWCA preempts plaintiffs' state tort claims against his employer, co-employee, and several of his employers' insurance companies).

Furthermore, plaintiffs and Amchem's arguments to the contrary are without merit. First, they dedicate much of their briefing to the contention that Mr. Becnel's injuries occurred in

the so-called "twilight zone" of concurrent state-federal jurisdiction, and that their state claims are therefore permissible. *See* Rec. Docs. 552, 545. Consistent with prior district-court opinions, the Court rejects this argument. *See Sentilles*, 2022 WL 1211429, at *7-8; *Cortez*, 2022 WL 1001445, at *7. Plaintiffs also argue that preemption does not apply because neither the decedent nor themselves are seeking benefits under the LHWCA. Rec. Doc. 552 at 18. This Court has rejected this argument before, and it rejects it again. *See Krutz*, 2021 WL 5893981, at *8 (rejecting plaintiff's contention that his claims were not preempted because he was not seeking LHWCA benefits); *Hulin*, 2020 WL 6059645, at *7 (same). The Fifth Circuit has made clear that, if the LHWCA covers an employee's injury, his only remedy against an employer lies in workers' compensation. *Rosetti*, 821 F.2d at 1085. Just because plaintiffs have not elected to pursue benefits under the LHWCA it does not affect the preemptive power of the Act itself. *Sentilles v. Huntington Ingalls Inc.*, No. CV 21-958, 2022 WL 1211429, *8 (E.D. La. Apr. 25, 2022). Permitting these tort claims merely because Mr. Becnel and plaintiffs have foregone the LHWCA avenue would conflict with LHWCA's text and undermine the *quid pro quo* that Congress enacted.

For these reasons, the Court finds that the LHWCA preempts plaintiff's state-law claims, and summary judgment is appropriate.

15

iv. Preemption of Plaintiffs' Claims Based on Decedent's "take-home" Exposure

Plaintiffs not only sued Avondale based on the decedent's direct exposure on the shipyard, but also his exposure through his clothing and the clothing of his co-workers while on the bus leaving Avondale. Specifically, plaintiffs assert that Mr. Becnel was exposed to asbestos in his home via his contaminated clothing. Rec. Doc. 552 at 20-22. In support, plaintiffs cite the affidavit of their expert, Dr. Stephen Kraus. *Id.* Dr. Kraus opined that asbestos home contamination occurs from the wearing home of contaminated clothing, shoes, and other similar items. Rec. Doc. 552-31 (Affidavit of Dr. Stephen Kraus at paragraph 19). He also noted that the decedent had significant at home exposure due to his contaminated work clothing. *Id.* The parties dispute whether plaintiffs' tort claims based on the decedent's alleged "take-home" exposure are preempted by the LHWCA.

The LHWCA covers "accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury." 33 U.S.C. § 902(2). Similarly, the exclusivity provision of the LHWCA provides that the "liability of an employer prescribed in ... this title shall be exclusive and in place of all other liability of such employer to the employee." 33 U.S.C. § 905(a); *see also*

16

*Rosetti*, 821 F.2d at 1085 ("Under the LHWCA, workers['] compensation is the exclusive remedy for an injured employee against his employer.").

Here, plaintiffs' claim based on Mr. Becnel's alleged take-home exposure arose out of and occurred in the course of his employment with Avondale. Plaintiffs allege that the decedent was exposed to asbestos during the course of his employment at Avondale, and then carried the asbestos home with him on his clothing and other materials that he brought home from the shipyard. They also assert that his co-workers exposed him to asbestos through their clothing on the bus leaving Avondale. Thus, the exposure began at work. Mr. Becnel would not have had asbestos dust to inhale, whether on the bus or at home, had it not arisen out of his employment at Avondale Shipyard. Accordingly, the Court finds that plaintiffs' off-site asbestos exposure claim arose out of and in the course of Mr. Becnel's employment at Avondale and is therefore covered by the LHWCA. *See Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 5071115, *7 (E.D. La. Aug. 26, 2020) (barring plaintiffs asbestos exposure claims based on contamination carried home on the decedent's clothing from Avondale under the LHWCA); *Barrosse v. Huntington Ingalls Inc.*, 563 F. Supp. 3d 541, 555 (E.D. La. 2021), *judgment entered*, No. CV 20-2042-WBV-JVM, 2021 WL 5447447 (E.D. La. Nov. 22, 2021) (same).

### D. Dismissal of Plaintiffs' Intentional Tort Claims

The Court further finds that plaintiffs' intentional tort claims against Avondale must be dismissed. Unlike the Louisiana Workers' Compensation Act, the LHWCA does not contain an explicit intentional tort exception. *Compare* La. R.S. 23:1032(A), *with* 33 U.S.C.A. § 933(i), *and* 33 U.S.C.A. § 905(a). *See also Latimer v. Chet Morrison Contractors*, No. 11-CV-806, 2013 WL 5592967, *4 (W.D. La. Oct. 9, 2013) ("Nothing in the language of the [LHWCA] identifies an intentional tort exception, and, to date, the Fifth Circuit has "not yet expressly recognized" such an exception.") The parties dispute whether the LHWCA recognizes such an exception.

Although the Fifth Circuit has not decided the issue, several federal district courts within the Fifth Circuit, along with Louisiana state courts, have weighed in. *See e.g.*, *Dempster v. Lamorak Ins. Co.*, No. 20-95, 2020 WL 1984327 (E.D. La. Apr. 27, 2020). In denying a defendant's motion for summary judgment on this issue, this Court stated,

> While "the LHWCA does not have a specific provision expressly stating that an employer's intentional tort is an exception to the statute's 'exclusive remedy' provision ... a number of court decisions, from Louisiana and from other jurisdictions, have stated that an employer's intentional tort is an exception to the exclusive remedy provision of the LHWCA and that, in such cases, the employee may bring a tort action against the employer." However, those courts "strictly ... applied the exception for intentional torts." For example, "'[n]othing short of a specific intent to

18

injure the employee falls outside of the scope of the
[LHWCA].'" Therefore, a plaintiff must show that the
defendant had a specific intent to injure the plaintiff.

*Dempster*, 2020 WL 1984327 at *11. Nevertheless, even if this Court
were to hold such an exception exists, plaintiffs' claim would
still be dismissed because they failed to provide sufficient
evidence to satisfy their burden under Louisiana law.

To prove an intentional tort, plaintiffs must show that
Avondale either consciously desired Mr. Becnel contract primary
lung cancer or knew that the result was substantially certain to
follow from its conduct. *Zimko v. Am. Cyanamid*, 905 So. 2d 465,
475 (La. App. 4 Cir. 2005), *cert. denied*, 925 So. 2d 538 (2006).
"Substantial certainty requires more than a reasonable probability
that an injury will occur," and plaintiff must prove that his
contracting lung cancer was "inevitable or incapable of failing."
*Cortez v. Lamorak Ins. Co.*, No. CV 20-2389, 2022 WL 1001445, *11
(E.D. La. Apr. 4, 2022); *Reeves v. Structural Pres. Sys.*, 731 So.
2d 208, 213 (La. 1999). The "belie[f] that someone may, or even
probably will, eventually get hurt if a workplace practice is
continued does not rise to the level of intentional tort, but
instead falls within the range of negligent acts ..." *Reeves*, 731
So. 2d at 214; Dempster, 2020 WL 1984327 at *10 (quoting *Reeves*,
731 So. 2d at 214). To prove a claim for intentional tort,
Plaintiffs would have to show that Avondale's "conduct [went]
beyond knowingly permitting a hazardous work condition to exist,

ordering an employee to perform an extremely dangerous job, or willfully failing to furnish a safe place to work ..." *Zimko*, 905 So. 2d at 477.

Plaintiffs contend that there are disputed issues of fact regarding Avondale's "motive and intent" as to the decedent's asbestos exposure. However, the evidence plaintiffs present fall woefully short of what is necessary to raise a material issue for an intentional-tort claim. Plaintiffs point to several deposition testimonies from Avondale executives and corporate representatives, attesting to the fact that Avondale allegedly knew of the hazards of asbestos in as early as the 1940s. Rec. Doc. 552. Specifically, plaintiffs point to the testimony of former Avondale executive Ollie Gatlin. Rec. Doc. 552-14 (Deposition Testimony of Ollie Gatlin). Gatlin testified that he knew in the 1960s that asbestos was a health hazard. *Id.* at pg. 203. Even considering this testimony in the light most favorable to plaintiffs, it does not prove intent on the part of Avondale because "mere knowledge and appreciation of a risk does not constitute intent…." *Cortez*, 2022 WL 1001445 at *12.

Gatlin further stated that he heard Burnette Bordelon, a former Avondale insulation superintendent, mention that "it was a damned lie that asbestos could hurt people." Rec. Doc. 552-14 (Deposition Testimony of Ollie Gatlin at pg. 214-15). Plaintiffs also assert that not only was Avondale aware of the asbestos

hazard, but it allowed employees to continue to work around it. For support, plaintiffs point to the trial testimony of Rev. Willie Jack Steward and Luther Dempster. Rec. Doc. 552. Both witnesses testified that Avondale allowed employees to work with and around asbestos insulation but warned them to stay away from such products when the yard was undergoing inspections. *See* Rec. Doc. 552-17 (Trial Testimony of Rev. Willie Jack Steward at pg. 19-21); Rec. Doc. 552-18 (Trial Testimony of Luther Dempster at pg. 275-76, 304). This evidence also falls short of proving intent on the part of Avondale given that such conduct by an employer, even though reckless, does not constitute an intentional wrongdoing. *See Cortez*, 2022 WL 1001445 at *12.

Furthermore, the evidence presented is not enough for this Court to deny summary judgment. *Cortez*, 2022 WL 1001445 at *11. ("it is not sufficient for plaintiff to show that [defendant] had knowledge that its practices were dangerous and created a high probability that someone would eventually be injured.") Plaintiffs have not submitted any evidence suggesting that Avondale consciously intended to harm Mr. Becnel, or that his primary lung cancer was "inevitable or incapable of failing." Accordingly, the Court finds plaintiffs intentional tort claim must be dismissed. *See Cortez*, 2022 WL 1001445 at *12 (dismissing plaintiff's intentional tort claims against Avondale); *Vedros v. Northrop Grumman Shipbuilding, Inc.*, No. CIV.A. 11-1198, 2014 WL 906164, at

*3 (E.D. La. Mar. 7, 2014) (dismissing plaintiffs' intentional tort claims against Avondale with prejudice).

    New Orleans, Louisiana this 16th day of June, 2022

                                                  _____

                                        SENIOR UNITED STATES DISTRICT JUDGE