```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

**JAMES BECNEL ET AL**                                              **CIVIL ACTION**

**VERSUS**                                                          **NO. 19-14536**

**LAMORAK INSURANCE COMPANY ET AL**                                 **SECTION "B"(5)**

## ORDER AND REASONS

Before the Court are defendant Bayer CropScience, Inc.'s motion for partial summary judgment (Rec. Doc. 376), plaintiffs' opposition to defendant's motion (Rec. Doc. 531), and defendant's reply in support (Rec. Doc. 627). For the following reasons,

**IT IS ORDERED** that defendant's motion for partial summary judgment (Rec. Doc. 376) be **GRANTED in part**, dismissing plaintiffs' damages claims for loss of fringe benefits, increased insurance costs, survivors' pre-death loss of consortium (in as far as plaintiffs seek damages for exposures occurring prior to 1982), pre-death loss of consortium (survival action), and their income loss; and **DENIED in part**, retaining plaintiffs' damages claims for permanent disability, lost income/lost earning capacity, survivors' pre-death loss of consortium (post-1982 exposure), loss of consortium, loss of services, loss of support, grief, and other expenses.

1

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The facts of this case have been laid out in greater detail in previously issued Orders and Reasons and are adopted by reference herein.

On April 26, 2022, defendant Bayer CropScience, Inc., as Successor to Rhone-Poulenc AG Company, f/k/a Amchem Products, Inc., f/k/a Benjamin Foster Company ("Amchem") filed a motion for partial summary judgment. Rec. Doc. 376. Amchem asserted that the Court must dismiss certain damage items plaintiffs alleged in their complaint because there had been no evidence presented to support them. *Id.* Several other defendants joined in Amchem's motion, including BMW of North America, LLC, Certain Underwriters at Lloyd's, London and London Market Companies, Ford Motor Company, Honeywell International, Inc., Huntington Ingalls Incorporated, International Paper Company, and Morse TEC LLC, Volkswagen Group of America, Inc., and Uniroyal Holding, Incorporated. Rec. Docs. 383, 419, 422, 424, 425, 426, 438, 451, 468.

On May 17, 2022, plaintiffs filed an opposition to Amchem's motion. Rec. Doc. 531. They contend that defendant's motion should be denied as to all items of damages except loss of fringe benefits and increased insurance costs. *Id.* According to plaintiffs, they are no longer seeking to recover those two items of damages. *Id.* Amchem filed a reply supporting its motion on May 26, 2022. Rec. Doc. 627.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co.,*

3

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

### B. Plaintiffs' Damages

i. <u>Loss of Fringe Benefits and Increased Costs of Insurance</u>

Plaintiffs concede that they are no longer seeking to recover lost fringe benefits nor increased insurance costs. Accordingly, the Court grants the motion for summary judgment to the extent it seeks dismissal of plaintiffs' request for recovery of damages for increased insurance costs or loss of fringe benefits.

ii. <u>Permanent Disability</u>

For purposes of a general tort claim, disability damages are recognized as those general damages constituting any permanent disability or impairment that is secondary to the injuries sustained in the accident. *Brossett v. Howard*, 08-535, p. 19 (La.App. 3d Cir.12/10/08), 998 So.2d 916, 931, *writ denied*, 09-0077 (La.3/6/09), 3 So.3d 492; *see also Matos v. Clarendon National Insurance Company*, 00-2814, p. 11 (La.App. 1 Cir. 2/15/02), 808 So.2d 841, 848-49.

Plaintiffs have submitted sufficient evidence to establish that Mr. Becnel suffered a permanent disability. They cite to the affidavit of Dr. Stephen Kraus. Rec. Doc. 531-7 (Affidavit of Dr.

Stephen Terry Kraus at paragraphs 14-18); Rec. Doc. 531-7 (Sub-Exhibit A, Report of Dr. Stephen Kraus). Dr. Kraus has opined that in as early as 2018, Mr. Becnel began having symptoms from his lung cancer, including increased lethargy, inability to live his active lifestyle, and shortness of breath. *Id.* He has also noted that the decedent suffered from dizziness, weight loss, "sharp and stabbing" chest pain, and a severe cough. *Id.* Similarly, the deposition testimony of the decedent's children further provide support for the notion that he suffered an impairment that prohibited him from doing basic things. Rec. Doc. 531-10 (Deposition of James P. Becnel, Jr. at p. 32); Rec. Doc. 531-11 (Deposition of Sheila Becnel Eshete at pp. 40-41). Viewing this evidence in the light most favorable to plaintiffs, the Court finds they have satisfied their burden of proof on this element of damage.

    iii. <u>Lost Income and/or Lost Earning Capacity</u>

First, Amchem contends that plaintiffs have not set forth any factual or evidentiary basis for Decedent's alleged lost income and/or earning capacity. Rec. Doc. 376. According to defendant, Mr. Becnel is not entitled to recover damages for lost income because he was retired at the time he developed lung cancer. *Id.* at 3-4. In opposition, plaintiffs contend that they are entitled to recover damages for decedent's loss of income and expenses related to the injuries and death of the decedent. Rec. Doc. 531

5

at 4-7. Even though Mr. Becnel was not employed at the time he developed lung cancer, plaintiffs assert that he is entitled to an award for loss, impairment, or diminution of his ability to earn money under Louisiana law. *Id.* Furthermore, Plaintiffs assert that loss of earning capacity can be established by their testimony alone, and an expert is not required to establish loss of income and earnings capacity. *Id.*

Louisiana Civil Code article 2315(A) provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  Under Louisiana law there is a distinction between loss of future earnings (wages) and loss of future earning capacity. *See Folse v. Fakouri*, 371 So. 2d 1120, 1123-24 (La. 1979). *See also Hobgood v. Aucoin*, 574 So. 2d 344 (La. 1990). As the Louisiana Supreme Court has explained:

> Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.

*Folse*, 371 So.2d at 1123-24. Furthermore, loss of earning capacity can be established by a plaintiff's testimony alone, and an expert is not required to establish loss of income and earnings capacity. *Green v. Superior Oil Company*, 441 So. 2d 54, 56 (La. App. 3 Cir. 1983) (citing *Bize v. Boyer*, 402 So. 2d 110 (La. App. 3 Cir.

6

1981)), *affirmed*, 408 So. 2d 1309 (La. 1982). *See also Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 3490431 (E.D. La. June 26, 2020) (citing *Finnie v. Vallee*, 620 So. 2d 897, 901 (La. App. 4 Cir.), *writ denied*, 625 So. 2d 1040 (La. 1993) ("While the plaintiff at all time has the burden of persuasion by the preponderance of the evidence regarding his earning capacity before and after the accident, proof need only be that which would reasonably establish the claim. Expert testimony of an economist might best prove this type of loss. However, the plaintiff's own testimony, if credible and truthful, may suffice in proving his claim."))

Plaintiffs point to the decedent's perpetuation deposition testimony, as well as the deposition testimony of plaintiffs themselves, to show the impact the decedent's lung cancer had on his ability to perform certain tasks. Specifically, plaintiffs point to Mr. Becnel's testimony in which he states his lung cancer prevented him from doing anything. Rec. Doc. 531-3 (Perpetuation Deposition of James P. Becnel at pp. 102-103). Plaintiffs also cite to their own testimony in which they state the decedent's cancer prevented him from doing basic household activities. Rec. Doc. 531-10 (Deposition of James P. Becnel, Jr. at p. 32); Rec. Doc. 531-11 (Deposition of Sheila Becnel Eschete at pp. 40-41). This evidence may be considered by the jury in determining whether the decedent suffered a loss of earning capacity. Accordingly,

7

there are disputed issues of material fact precluding summary judgment on this issue.

    iv.  <u>Pre-Death Loss of Consortium</u>

To the extent plaintiffs are seeking loss of consortium damages as a component of their survival action, Amchem argues such damages are not available under Louisiana law "[b]ecause loss of consortium is not an injury to the person who bore the direct impact of the defendant's negligence but to another person whose relationship to the primary victim is diminished as a consequence." Rec. Doc. 376 at 5. Moreover, Anchem alleges that pre-death loss of consortium damages are also unavailable as part of their wrongful death action because the alleged exposures to asbestos occurred before Louisiana Civil Code article 2315 was amended in 1982. *Id.* Specifically, Amchem argues that all the alleged exposure attributable to its products occurred during the decedent's 1965 Avondale employment. *Id.*

In response, plaintiffs acknowledge that they cannot recover for pre-death loss of consortium claims pertaining to the surviving plaintiffs if the alleged exposure occurred before 1982. Rec. Doc. 531 at 7. However, they argue they can present sufficient evidence that the decedent was exposed to asbestos after 1982. *Id.* at 7-8. Plaintiffs also assert they can recover for the pre-death loss of consortium damages that constitute an element of decedent's own

8

damages, which they argue have always been an element of general damages under Louisiana law. *Id.* at 8-13.

Louisiana Civil Code article 2315 provides in pertinent part:

A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
B. Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person…

Concerning their wrongful death action, plaintiffs do not dispute they cannot recover for pre-death loss of consortium pertaining to pre-1982 exposure claims given the 1982 amendment to Article 2315 is not retroactive. However, plaintiffs have failed to submit any evidence of the decedent's post-1982 asbestos exposure attributable to Amchem's products. As it stands, the only evidence plaintiffs have presented of post-1982 asbestos exposures are targeted at the other joinder defendants. *See* Rec. Doc. 531 at 8. Because plaintiffs have not presented any evidence to support their damage claim for pre-death loss of consortium against Amchem, summary judgment is granted on this issue. Furthermore, because plaintiffs cannot recover damages for any pre-death loss of consortium based on pre-1982 asbestos exposures, any such claims plaintiffs have asserted are also dismissed as a matter of law.

Concerning plaintiffs' loss of consortium claims relative to post-1982 asbestos exposures, they have provided sufficient evidence to satisfy their burden of proof. As noted *supra*,

9

plaintiffs have provided evidentiary support that the decedent was exposed to asbestos products manufactured by several joinder defendants. They point to the deposition testimony of the decedent in which he stated that he was exposed to asbestos when he worked as a mechanic in his garage after 1982. Rec. Doc. 531-3 (Perpetuation Deposition of James p. Becnel at pp. 72-73). Mr. Becnel also testified that he worked with clutches manufactured by Borg Warner and Bendix and performed brake and clutch work on vehicles manufactured by BMW, Ford, International, and Volkswagen. Rec. Doc. 531-4 (Discovery Deposition of James p. Becnel at pp. 765-771). Plaintiffs also cite to the deposition testimony of the decedent's brother and co-worker, Thomas Becnel. Rec. Doc. 531-5 (Deposition of Thomas Becnel). Thomas Becnel testified that the aforementioned brake and clutch parts contained asbestos until the late 1980s/early 1990s. *Id.* at pp. 36-37. Additionally, he testified that both he and the decedent were exposed to asbestos while changing the previously mentioned brakes and clutches. *Id.* at pp. 32-36. Viewing this evidence in the light most favorable to plaintiffs, there are genuine issues of material fact as to whether they can recover for this category of damages. Accordingly, summary judgment is denied as to this item of damage.

Relying on *McGee v. A C And S, Inc.*, 05-1035 (La. 7/10/06); 933 So. 2d 770, plaintiffs also contend that they should be able to recover for the decedent's pre-death loss of consortium as part

10

of their survival action. In *McGee*, the Louisiana Supreme Court explained the distinction between damages for loss of enjoyment of life and loss of consortium. 933 So. 2d 770. As the Louisiana Supreme Court explained, a tort victim may "be compensated for the damage sustained as a result of the delict, including those for loss of enjoyment of life, if proven." *Id.* at 774. "Loss of enjoyment of life, sometimes known as hedonic damages, refers to the detrimental alterations of a person's life or lifestyle or a person's inability to participate in the activities or pleasures of life that were formerly enjoyed." *Id.* at 773 (citing *Day v. Ouachita Parish Sch. Bd.*, 35,831, p. 8 (La. App. 2 Cir. 8/8/02); 823 So. 2d 1039, 1044). Damages for loss of enjoyment of life are considered "general damages because it involves the quality of a person's life, which is inherently speculative and cannot be measured definitively in terms of money." *Id.* at 774.

However, the Louisiana Supreme Court clarified that "although a separate award for loss of enjoyment of life may be recoverable by the primary tort victim for the loss of enjoyment of life sustained during the victim's lifetime, it is not recoverable by the primary tort victim's family members who are eligible to recover for loss of consortium, service and society" under Louisiana Civil Code article 2315(B). *Id.* at 779. "Loss of consortium is a harm to relational interest which occurs when the other party to the relationship suffers physical harm (invasion of

11

an interest or personality)." *McGee*, 933 So. 2d at 779 (citing *Ferrell v. Fireman's Fund Ins. Co.*, 96-3028, p. 8 (La.7/1/97); 696 So. 2d 569, 574). Conversely, a primary tort victim cannot recover damages for loss of consortium because the primary tort victim is entitled to recover damages for loss of enjoyment of life. *See Brock v. Singleton*, 10-550 (La. App. 5 Cir. 3/29/11); 65 So. 3d 649, *writ denied*, 2011-1216 (La. 9/23/11); 69 So. 3d 1160 (reversing judgment and finding it erroneous to list loss of consortium as an item of damages for the primary tort victim).

Plaintiffs are not entitled to recover for loss of consortium as part of their survival action given the decedent himself was not entitled to that item of damages. *See Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 3490431 (E.D. La. June 26, 2020) (holding plaintiffs could not recover pre-death loss of consortium damages as part of their survival action); *Matter of Crosby Marine Transportation, L.L.C.*, No. CV 17-14023, 2021 WL 1931168 (E.D. La. May 13, 2021) ("[t]he damages recoverable for the survival action include conscious pain and suffering, loss of earnings, and other damages **sustained by the victim** from the time of the injury up to the moment of death.") (emphasis added). Nonetheless, plaintiffs may present evidence of the impact Mr. Becnel's lung cancer had on his life, including any detrimental alterations to his life or lifestyle or his inability to participate in the activities or pleasures of life that he previously enjoyed. But, any such damages

12

that Mr. Becnel incurred are recoverable as general damages and not damages for loss of consortium. Accordingly, because there are no material facts in dispute, summary judgment is granted on this claim.

### C. Recovery of Plaintiffs' Income Loss

Amchem contends that Louisiana law does not allow surviving family members to recover for their own loss of income. Conversely, plaintiffs argue that they can recover for their lost income because they took on the role of decedent's primary caregivers.

One may recover loss of earnings for attending to an injured spouse. *Keeth v. State Through Dep't of Pub. Safety & Transp.*, 618 So. 2d 1154 (La. Ct. App.), *writ dismissed sub nom. Keeth v. State, Through Dep't of Pub. Safety & Corr.*, 619 So. 2d 563 (La. 1993); Dempster v. Lamorak Ins. Co., No. CV 20-95, 2020 WL 3490431, *8 (E.D. La. June 26, 2020).

Amchem cites *Morgan v. Cenac*, 634 So. 2d 60 (La. App. 4 Cir. 1994), to support their argument. In *Morgan*, plaintiffs Gregory and Arlette Morgan sought to recover damages for Mr. Morgan's lost earning capacity and early retirement. *Id.* at 62. According to plaintiffs, Mr. Morgan had to retire early to care for his ailing wife. *Id.* They argued that "when one spouse becomes incapacitated and the other spouse terminates his employment to care for the injured spouse, the tortfeasor is liable for the lost wages caused by this employment termination." *Id.* The plaintiffs asserted that

13

this lost income was recognizable as a portion of a loss of consortium claim or, alternatively, as general damages. *Id.* The Louisiana Fourth Circuit Court of Appeal held that the primary tort victim was entitled to recover the cost of care and other services that were required because of her injuries, and the spouse of the primary tort victim was entitled to recover for the loss of his wife's services and support to the community. *Morgan*, 634 So. 2d at 63.

This case is distinguishable from *Morgan* because plaintiffs are not seeking to recover loss of future earning capacity of the surviving plaintiffs or damages incurred as a result of an early retirement of any surviving plaintiff. Rather, plaintiffs here are seeking to recover loss of earnings while attending to the care of the decedent. However, they have not put forth any evidence of lost income. All the evidentiary support on which plaintiffs rely merely shows that they acted as caregivers and did work around the home that Mr. Becnel would have done had he been able. *See* Rec. Doc. 531-12 (Deposition of Jacqueline Becnel at p. 49); Rec. Doc. 531-10 (Deposition of James P. Becnel, Jr. at pp. 41-43); Rec. Doc. 531-11 (Deposition of Sheila Becnel Eschete at pp. 38-39). There is no evidence of any plaintiff terminating their employment or taking a leave of absence to stay home and act as a fulltime caregiver to the decedent. *See e.g., Keeth*, 618 So. 2d at 1163 (finding the plaintiff's non-injured spouse could recover damages

for her own income loss because she proved through the testimony of her supervisor that she took five sick days and a four-month leave of absence to care for her seriously injured husband.).

This matter is also distinguishable from the case plaintiffs cite, *Greenberg v. New Orleans Pub. Serv.,* 74 So. 2d 771 (La. Ct. App. 1954). In *Greenberg*, the Court allowed an injured plaintiff's wife to recover damages in the amount of $315.00 per month because she had to relinquish her employment with Tujague Company to maintain the injured spouse's business. *Greenberg* is not analogous as plaintiffs suggest. Unlike the non-injured spouse in *Greenberg*, the plaintiffs in this case have not presented any evidence that anyone has relinquished employment in order to take care of the decedent's business. Accordingly, the Court finds that defendants are entitled to summary judgment on this issue.

### D. Recovery of Other Expenses

Under Louisiana law, "[i]f a person dies due to the fault of another, suit may be brought by [the surviving spouse and ... children of the deceased] to recover damages which they sustained as a result of the death." La. Civ. Code art. 2315.2. "Wrongful death damages are meant to compensate the designated survivors for their loss of the decedent." *Salama v. State of La*., 211 So. 3d 396, 399 (La. Ct. App. 1st Cir. 2017). "The elements of damage for a wrongful death action are loss of love, affection, companionship, services, support, medical expenses and funeral expenses.

15

Additionally, the courts have allowed damages in wrongful death actions for mental pain, suffering, and distress resulting from the death of the victim." *Hill v. Shelter Mut. Ins. Co.*, 935 So. 2d 691, 695 (La. 2006).

Plaintiffs assert they are entitled to recover for the decedent's funeral expenses and medical bills. They attach as exhibits copies of the decedent's medical and funeral bills. Rec. Doc. 531-13 (Funeral Expenses); Rec. Doc. 531-14 (Medical Expenses). Because the law allows for survivors in a wrongful death action to recover for such expenses, and because plaintiffs have provided sufficient evidence in support of their claim, the Court finds Amchem is not entitled to summary judgment on this element of damages. *See Matter of Crosby Marine Transportation, L.L.C.*, No. CV 17-14023, 2021 WL 1931168, at *3 (E.D. La. May 13, 2021) ("[d]amages recoverable for wrongful death include loss of love, affection, companionship, services, and support, as well as medical and funeral expenses.").

### E. Plaintiffs' Claims for Loss of Services, Loss of Support, and Grief

Amchem argues that plaintiffs cannot recover for loss and consortium and loss of support, loss of services, and grief. Defendant asserts that such items of damages are duplicative given that loss of consortium encompasses the other items of damage. Rec. Doc. 376 at 6. Plaintiffs disagree. Rec. Doc. 531 at 13.

16

The elements of damages of wrongful death are loss of love and affection, loss of services, loss of support, medical expenses, and funeral expenses. *Smith v. Municipality of Ferriday*, 2005-755 (La.App. 3rd Cir.2/1/06), 922 So.2d 1222, 1231. Additionally, courts have allowed damages in wrongful death actions for mental pain, suffering, and distress resulting from the death of the victim. *Bryant v. Sullivan*, 1997-2008 (La.App. 4th Cir.3/25/98), 712 So.2d 145, 147; *Hasha v. Calcasieu Parish Police Jury*, 651 So.2d 865, 876 (La.App. 3rd Cir.1995).

Because the Court has already established that plaintiffs can recover for loss of consortium based on post-1982 asbestos exposures, we will not revisit that claim. Concerning their remaining claims for loss of services, support, and grief, plaintiffs are entitled to such damages under the law. *See Matter of Crosby Marine Transportation, L.L.C.*, 2021 WL 1931168, at *3. Additionally, plaintiffs have presented sufficient evidentiary support for all three items of damage as discussed in greater detail, *supra*. *See* Rec. Doc. 531-11 (Deposition of Sheila Becnel Eshete at pp. 36-37) (testifying as to the effect of her father's illness); Rec. Doc. 531-10 (Deposition of James P. Becnel, Jr. at pp. 29-33, 42-43) (testifying that decedent's illness slowed him down, stopped him from doing family activities, and prohibited him from completing work around the home); Rec. Doc. 531-12 (Deposition of Jacqueline Becnel at pp. 24-25, 27) (testifying that the

17

decedent had a loving relationship with her, and their children and they would routinely take family trips to their campsite before his illness). Accordingly, defendant's motion for summary judgment is denied as to this point.

New Orleans, Louisiana this 16th day of June, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE