**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JAMES BECNEL ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-14536** |
| **LAMORAK INSURANCE COMPANY ET AL** | **SECTION "B"(5)** |

**ORDER AND REASONS**

Before the Court are Defendant National Automotive Parts Association LLC's ("NAPA") motion for summary judgment (Rec. Doc. 360), Plaintiffs' opposition to the motion (Rec. Doc. 521), Defendant Huntington Ingalls Incorporated's ("Avondale") opposition to NAPA's motion for summary judgment (Rec. Doc 527), and NAPA's reply in support (Rec. Doc. 597). For the following reasons,

**IT IS HEREBY ORDERED** that the motion is **DENIED**.

**FACTS AND PROCEDURAL HISTORY**

The facts of this case have been laid out in greater detail in previously issued Orders and Reasons and are adopted by reference herein.

On September 12, 2019, National Auto Parts Association ("NAPA") filed a Declinatory Exception of Lack of Personal Jurisdiction in state court prior to this matter being removed. *See* Rec. Doc. 360-3 (NAPA Declinatory Exception of Lack of Personal Jurisdiction). The Exception was overruled. *See* Rec. Doc. 360-4

(Judgment on NAPA Declinatory Exception of Lack of Personal Jurisdiction).

On April 26, 2022, NAPA filed a motion for summary judgment asserting similar, if not identical, arguments from its previously denied declinatory exception. Rec. Doc. 360-1. Plaintiff filed an opposition to NAPA's motion on May 17, 2022. Rec. Doc. 521. On May 17, 2022, Defendant Avondale also filed an opposition to NAPA's motion for summary judgment. Rec. Doc. 527. Subsequently, on May 25, 2022, NAPA filed a reply to both Plaintiff and Avondale's oppositions. Rec. Doc. 597.

**LAW AND ANALYSIS**

    **A. Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to

the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

### B. Whether NAPA is Entitled to Summary Judgment on Grounds of Lack of Personal Jurisdiction

NAPA contends its motion for summary judgment should be granted because this Court lacks personal jurisdiction. Rec. Doc. 360. NAPA cites the Louisiana Long-Arm statute, an affidavit from a corporate witness, as well as several cases in support of its claim. NAPA's main assertion is it lacks sufficient contacts with the state of Louisiana to justify this Court's exercise of personal

jurisdiction. Plaintiffs rebut NAPA's argument that it did not transact business in the state and assert that it is indeed a manufacturer under Louisiana law and has conducted sufficient business transactions within Louisiana to be hauled into court in this state.

In two seminal decisions, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2847, 2853-54 (2011), and *Daimler AG v. Bauman*, 134 S. Ct. 746, 757 (2014), the United States Supreme Court held that the exercise of general personal jurisdiction over a corporation is justified when the corporation is either incorporated in the forum state or has its principal place of business there. The decisions in *Daimler* and *Goodyear* also apply equally to limited liability corporations. *See Daimler*, 134 S. Ct. at 761 (looking to MBUSA's place of incorporation and principal place of business to determine whether general jurisdiction existed, even though MBUSA was an LLC.)

Here, defendant NAPA is a limited liability company with its principal place of business in Atlanta, Georgia. Rec. Doc. 360. Thus, NAPA is a citizen of Atlanta and its place of incorporation. NAPA was not incorporated in Louisiana, nor does it have any corporate offices in this state. Therefore, this corporation is not at home in Louisiana for this Court to exercise general personal jurisdiction over this defendant. Given NAPA is a non-resident defendant, the Court must go further to determine whether

we can nevertheless exercise personal jurisdiction over it as a non-resident defendant.

A court has specific personal jurisdiction over a nonresident defendant when: (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Gross v. RSJ Int'l, LLC*, No. CIV.A. 11-73, 2012 WL 729955 (E.D. La. Mar. 6, 2012) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999)). Because Louisiana's long-arm statute, La. R.S. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir.1999) (citing La. R.S. § 13:3201(B)).

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). This Circuit follows a three-step analysis for specific jurisdiction. *Seiferth*

*v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir.2006).

First, the Court must determine "whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841 (5th Cir.2000). Second, the Court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *First Inv. Corp. of the Marshall Islands v. Fujian Mawei Shipbuilding, Ltd. of People's Republic of China*, 858 F. Supp. 2d 658 (E.D. La.), *aff'd sub nom. First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742 (5th Cir. 2012), *as revised* (Jan. 17, 2013). The proper focus of the personal jurisdiction analysis is on the "relationship among the defendant, the forum, and the litigation." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir.2008). Lastly, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise of jurisdiction would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985)).

> i. <u>NAPA Purposefully directed activities at the forum state</u>

Here, Plaintiffs and Avondale have offered substantial evidence that NAPA's activity satisfies the requirement of minimum contacts with Louisiana. Plaintiffs point to the deposition testimony of the decedent who testified that while working in the Becnel Garage from 1958 to 1963, and again from 1967 to 2008, he obtained replacement parts, and specifically Rayloc brakes, from Pope's Parts in Thibodeaux, Louisiana. Rec. Doc. 521-6 (Discovery Deposition of James Becnel at pp. 336, 461, 465-66, 491, 555-56). The decedent also testified that Pope's Parts was a NAPA-branded distributor, and the brakes and clutches he ordered came in in boxes brandishing the NAPA logo. *Id.* Plaintiffs also attached a printout of the NAPA website, confirming and identifying Pope's Parts as a NAPA store. Rec. Doc. 521-11 (NAPA Website Printout). The decedent further testified that he obtained parts from the NAPA store located in New Orleans, Louisiana. Rec. Doc. 521-6 (Discovery Deposition of James Becnel at pp. 414); Rec. Doc. 521-5 (Perpetuation Deposition of James Becnel at p. 98). Mr. Becnel also testified that he attended mechanic classes once a year that were held by NAPA in Thibodaux, Louisiana. Rec. Doc. 521-6 (Discovery Deposition of James Becnel at pp. 334-35, 428-29).

Plaintiffs also point to the testimony of Thomas L. D'Aquin, Jr. ("D'Aquin"), a former employee of Genuine Parts Company

("GPC"), who confirmed that the parts the decedent claimed to have purchased from the New Orleans, LA distribution center would have been obtained from that location. Rec. Doc. 521-12 (Deposition of Thomas L. D'Aquin, Jr. at pp. 48-49). D'Aquin also testified that the various NAPA stores in the area would be serviced by the New Orleans distribution center. *Id.* at p. 52.

Plaintiffs also offered testimony from Byron Frantz ("Frantz"), a corporate representative of GPC. Rec. Doc. 521-10 (Deposition of Byron Frantz). Frantz testified that NAPA owned the Rayloc trademark and licensed it to GPC, and that Rayloc brakes were marketed under the NAPA name. *Id.* at pp. 273-75. He also confirmed that GPC only sold Rayloc products through NAPA distribution centers from 1960 through the 1990s and that the NAPA name was on the Rayloc product boxes. *Id.*

Plaintiffs also offered testimony from Gaylord Spencer ("Spencer"), a NAPA corporate representative. Rec. Doc. 521-8 (Deposition of Gaylord Spencer). Spencer provided testimony about the relationship between Pope's Parts and NAPA. *See Id.* He testified that NAPA maintains at least sixty distribution centers around the country and that NAPA branded stores, like Pope's Parts, have access to parts from distribution centers. *Id.* at pp. 7-8, 32-33. He also stated that NAPA provides marketing and advertising services to member companies like GPC and Pope's Parts. *Id.* at pp. 28.

Similarly, Avondale points to the deposition testimony of Pope's Parts corporate representative, Gregory Diez. Diez testified that to use the NAPA logo, sell NAPA products, and participate in NAPA's national advertising campaign, Pope's was required to pay an annual fee to NAPA. Rec. Doc. 527-8 (Deposition of Gregory Diez at pp. 41-44). Diez also confirmed that the products sold by Pope's Parts contained the "NAPA Quality of Assurance" logo and the NAPA logo appeared on product boxes, in the store, on the building itself, and on employee uniforms. Rec. Doc. 521-13 (Deposition of Gregory Diez at pp. 34-35, 78-79).

NAPA argues that it merely allows its members to operate automotive part distribution centers with the NAPA logo and trademark. Rec. Doc. 360. Additionally, defendant contends that it does not operate wholesale or retail businesses, nor does it manufacture, sell, or distribute any automotive parts. NAPA points to the affidavit of its former Director of Loyalty, Whitney Swingle, for support. Rec. Doc. 360-8 (Affidavit of Whitney Swingle). Swingle stated that "NAPA does not manufacture, design, distribute, supply, or sell automotive parts or otherwise place automotive parts into the stream of commerce." *Id.* She further asserted that NAPA does not distribute parts; instead, it functions as a trade association for its members, who are themselves distributors. *Id.*

Nonetheless, this Court finds that plaintiffs and Avondale have presented significant evidence to the contrary, including evidence showing that NAPA distributed Rayloc brakes and other automotive parts through its distribution centers in this state. Considering the evidence presented in its entirety, not only does it seem that NAPA is distributing products in Louisiana by having local distribution centers brandishing its logo, but it also provided services in this state by conducting mechanic classes. Viewing this in the light most favorable to plaintiffs, they have made a showing that NAPA: (1) distributed, supplied, marketed, and benefitted from the sale of its Rayloc brakes; (2) expressly aimed at, marketed, sold, and distributed in Louisiana, and (3) caused harm that it knew was likely to be suffered in Louisiana. *See United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006) (stating the court should view all facts and evidence in the light most favorable to the non-moving party). Accordingly, they have provided sufficient support that NAPA purposefully availed itself of the privilege of conducting activities in Louisiana, thereby invoking the benefits and protections of its laws.

ii. Plaintiffs' claims arise out of NAPA's activity

Having determined that the defendant has the requisite minimum contacts required to exercise personal jurisdiction, this Court must now consider whether the plaintiffs' cause of action

arises out of or results from NAPA's forum-related contacts. To determine whether a suit arises out of or relates to a defendant's specific contacts with the forum state, this Courts will utilize a "but for" test. *See Benson v. Rosenthal*, 116 F. Supp. 3d 702 (E.D. La. 2015) (stating that the Fifth Circuit would subscribe to a "but for" analysis*); Trinity Indus., Inc. v. Myers & Associates, Ltd.*, 41 F.3d 229 (5th Cir.1995) (utilizing "but for" test and finding that plaintiff's claims arose out of defendant's contacts with Texas).

Therefore, the issue here is: but for NAPA's contacts with Louisiana, would plaintiffs' claims against NAPA have arisen? NAPA argues that they cannot satisfy the but for test because it "does not manufacture, sell, supply, or hold itself out to be the manufacturer of any automotive products." Rec. Doc. 360 at 3. Plaintiffs, however, have offered sufficient evidence that their claims against NAPA would not have arisen but for NAPA's contacts in Louisiana, and specifically, NAPA's distribution, marketing, and sale of automotive parts and alleged asbestos containing Rayloc brakes. *See* Section B(i), *supra*. In essence, plaintiffs provide that but for NAPA's distribution, marketing, sale, and quality assurance of Rayloc brakes in Louisiana, the decedent would not have purchased the brakes and thereby would not have been exposed to asbestos from that product. *See* Rec. Doc. 521. Therefore,

plaintiffs have provided sufficient support that their claims arise out of NAPA's Louisiana-related activities.

### iii. This Court's exercise of jurisdiction is reasonable

Finally, this Court must consider whether the exercise of jurisdiction over Defendant would be fair and reasonable.

> In determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown. In this inquiry we examine five factors: (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.

*McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir.2009) (internal quotations omitted); *Benson v. Rosenthal*, 116 F. Supp. 3d 702, 713 (E.D. La. 2015).

The exercise of jurisdiction here would be reasonable. NAPA did not assert in its motion that it would be a great burden to be hauled into court in Louisiana. Defendant simply maintained that this Court's exercise of jurisdiction is inappropriate due to it being a membership organization, lacking minimum contacts with this state. Although the burden on NAPA would be high given its out of state citizenship, the interest of the plaintiffs and the forum state outweigh it. Plaintiffs have a greater interest in obtaining convenient and effective relief. Likewise, the forum

state has a high level of interest in this case because the alleged asbestos exposure occurred in this jurisdiction. Furthermore, the products that caused the decedent's alleged injury were distributed and sold in Louisiana. Thus, the exercise of jurisdiction over this defendant does not violate the traditional notions of fair play or substantial justice. Accordingly, NAPA's motion for summary judgment is **DENIED.**

    New Orleans, Louisiana this 16th day of August, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE