UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES P. BECNEL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-14536** |
| **LAMORAK INSURANCE CO., ET AL.** | **SECTION "B"(5)** |

### ORDER AND REASONS

Before the Court are defendant Hopeman Brothers, Inc.'s motion for partial summary judgment (Rec. Doc. 362), plaintiffs' opposition to defendant's motion (Rec Doc. 539), Huntington Ingalls, Inc.'s memorandum in opposition (Rec. Doc. 505), and Hopeman Brothers, Inc.'s reply in support (Rec. Doc. 621). After careful consideration,

**IT IS ORDERED** that the motion (Rec. Doc. 362) is **DENIED**.

### I. FACTS AND PROCEDURAL HISTORY

The facts of this case have been laid out in greater detail in previously issued Orders and Reasons and are adopted by reference herein. *See* Rec. Docs. 1038, 913.

On April 26, 2022, Hopeman filed the instant motion for partial summary judgment. Rec. Doc. 362. Defendant presents plaintiffs' claims for strict liability should be dismissed as a matter of law. *Id.* Avondale filed a timely opposition on May 17, 2022. Rec. Doc. 505. On that same date, plaintiffs filed their own opposition to Hopeman's motion. Rec. Doc. 539. Hopeman filed a reply in support of its motion on May 26, 2022. Rec. Doc. 621.

1

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is

a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

### B. Availability of Strict Liability Claims Against Hopeman

Mr. Becnel's alleged asbestos exposure from Hopeman products occurred in 1965. Hopeman argues plaintiffs' "professional vendor" strict liability claims are without merit given the alleged cause of action was not in existence at the time of the decedent's alleged exposure. Rec. Doc. 362.

The Louisiana Supreme Court adopted the "professional vendor" theory of liability in *Chappuis v. Sears Roebuck & Co.*, 358 So. 2d 926 (La. 1978). However, the Court did not explicitly state the decision should only be applied prospectively. In the absence of such a specification, we find the theory of liability established in *Chappuis* must be given both retrospective and prospective application. *Succession of Clivens*, 426 So.2d 585, 587, 594 (La.1983) (on original hearing and rehearing) (declaring the general rule that unless a judicial decision specifies otherwise, it is to be given both retrospective and prospective effect.); *Charles v. United States,* 15 F.3d 400, 402 n. 4 (5th Cir.1994) ("'Generally, [under Louisiana law] unless a decision specifies

3

otherwise, it is given both retrospective and prospective effect.'"); *Gill v. Jacobs Eng'g Grp., Inc.*, No. CIV.A. 08-647-BAJ, 2011 WL 3796751, *2 (M.D. La. Aug. 26, 2011). This application of "professional vendor" strict liability also coincides with several sections of this Court which have found such claims for "professional vendor" liability to be applicable to a plaintiff's 1960's asbestos exposure. *See Cortez v. Lamorak Ins. Co.*, No. CV 20-2389, 2022 WL 2988061 (E.D. La. July 28, 2022) (applying the professional vendor standard of liability to plaintiffs' claims against a defendant who allegedly exposed the decedent to asbestos between 1966 and 1968); *Labarre v. Bienville Auto Parts Inc.*, No. CV 21-89, 2022 WL 293250 (E.D. La. Feb. 1, 2022) (applying the professional vendor standard of liability to plaintiffs' claims against a defendant who allegedly exposed the decedent to asbestos between 1961 and 2007). Accordingly, plaintiffs' "professional vendor" strict liability claim will be similarly reviewed.

### C. Manufacturer or "Professional Vendor" Strict Liability

Hopeman contends it cannot be held liable under either the manufacturer or "professional vendor" standards. Rec. Doc. 362. Concerning the manufacturer strict liability claim, defendant argues it provided a service as a joiner-subcontractor and did not manufacture the wallboards at issue. *Id.* Likewise, it asserts plaintiffs' "professional vendor" strict liability claim should be

4

dismissed because plaintiffs failed to satisfy their evidentiary burden of proof. *Id.*

Under Louisiana law, a plaintiff can recover against a manufacturer by proving that his injury was caused by a condition of the product existing at the time it left the manufacturer's control that rendered the product unreasonably dangerous in normal use. *Adams v. Owens-Corning Fiberglas Corp.*, 2004-1589 (La. App. 1 Cir. 9/23/05), 923 So. 2d 118, 122, *writ denied sub nom. Adams v. Owens-Corning Fiberglass Corp.*, 2005-2318 (La. 3/10/06), 925 So. 2d 519; La. R.S. 9:2800.54. This is a strict liability standard: "The plaintiff need not prove negligence by the maker in its manufacture or processing, since the manufacturer may be liable even though it exercised all possible care in the preparation and sale of its product." *Adams*, 923 So. 2d at 122.  Prior to the enactment of the LPLA, Louisiana law also categorized some products, including asbestos, as "unreasonably dangerous *per se.*" *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110, 113-17 (La. 1986); *Hulin v. Fibreboard*, 178 F.3d 316, 334 (5th Cir. 1999); *see also Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771, 793 (E.D. La. 2011) (retroactively applying the unreasonably dangerous per se theory of *Halphen* to a case where the decedent's claims against ExxonMobil arose out of work done in 1981 to 1983). "A product is unreasonably dangerous *per se* if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or

5

not, outweighs the utility of the product." *Adams*, 923 So. 2d at 122. A manufacturer could be held liable for injuries caused by such a product even if the manufacturer did not know and reasonably could not have known of the danger. *Id.*

A seller of a product or a "professional vendor" can also be held strictly liable as a manufacturer. *Labarre v. Bienville Auto Parts Inc.*, No. CV 21-89, 2022 WL 293250, *5 (E.D. La. Feb. 1, 2022); *see also Dempster v. Lamorak Ins. Co.*, 2020 WL 5659546, at *3 (E.D. La. Sept. 21, 2020). Under pre-LPLA Louisiana law, "[a] professional vendor 'is a retailer who does more than simply sell a certain product or products; it must engage in practices whereby it is capable of controlling the quality of the product, such that courts are justified in treating the retailer like a manufacturer.'" *Roy v. Colgate Palmolive Co.*, 2021 WL 1574038, at *3 (E.D. La. Apr. 22, 2021) (quoting *Nelton v. Astro-Lounger Mfg. Co.*, 542 So. 2d 128, 132 (La. App. 1989), and discussing the leading case of *Chappuis v. Sears Roebuck & Co.*, 358 So. 2d 926 (La. 1978)). "To prevail against a professional vendor of asbestos-containing products, a plaintiff must show: (1) the defendant held the products out to the public as its own, and (2) the size, volume, and merchandising practices of the defendant bring it within the class of professional vendors, who are presumed to know the defects in their wares." *Dempster v. Lamorak Ins. Co.*, 2020 WL 5659546, at *3 (E.D. La. Sept. 21, 2020).

In the present matter, the non-movants have provided sufficient evidence demonstrating a genuine issue of material fact precluding summary judgment. While Hopeman argues it merely performed services such as procuring and installing wallboard for Avondale, the non-moving point to the deposition transcript of John Baker, who testified that Hopeman supplied Micarta and Marinite to Wayne and directed Wayne to combine the two parts into a new and final product. Rec. Doc. 505-4 (Deposition Testimony of John E. Baker). Likewise, Avondale cites the deposition testimony of Hopeman's President, Bertram Hopeman, for support. Rec. Doc. 505-5 at 586-87 (Deposition of Bertram Hopeman). Mr. Hopeman testified that his company directed Wayne in various aspects of the manufacturing process. *Id.* Specifically, he declared that Hopeman would instruct Wayne to configure panels for projects and send over specifications for each panel, including color, size, and thickness. *Id.* The foregoing acts of directing Wayne to configure specific wallboards show Hopeman influenced the design and construction of the final product; and therefore, acted as a manufacturer. *See* La. Stat. Ann. § 9:2800.53(1) ("'Manufacturer' means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. 'Manufacturing a product' means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product.")

7

In addition to the evidence discussed *supra*, the non-movants have also pointed to several other exhibits indicating Hopeman may be held liable as a "professional vendor." For example, the first element of plaintiffs' claim is satisfied because there is evidence in the record that Hopeman held out the products it sold as its own. There are sample invoices from Hopeman to Avondale, requesting payment for the Micarta/Marinite composite panels at issue. Rec. Doc. 505-15 (Hopeman Invoices to Avondale). Additionally, the former receiver in Avondale's warehouse, Jose Cochran, also testified that the wall panels at issue were delivered in trucks marked with the Hopeman Brother's name/logo. Rec. Doc. 505-18 at 35-36 (Deposition Testimony of Jose Cochran). It is also undisputed that Hopeman installed the wallboard panels at Avondale Shipyards. *See* Rec. Doc. 362 at pp. 5-6. Taken together, the evidence presented supports a finding that Hopeman ordered and controlled the production and design of the panels, sought payment from Avondale, delivered and performed installations. The second prong is also satisfied given the evidence, discussed *supra*, supports the contention that Hopeman controlled the quality of the product. *See* Rec. Doc. 505-4 (Deposition Testimony of John E. Baker); Rec. Doc. 505-5 at 586-87(Deposition of Bertram Hopeman) (stating Hopeman directed Wayne to manufacturer panels with certain specifications).

Considering this evidence in the light most favorable to the non-movants and given this Court's previous ruling denying summary judgment on the issue of alter-ego liability,[1] we find genuine issues of material fact exist as to whether Hopeman is a manufacturer and/or "professional vendor" of the asbestos containing wallboard at issue. It is for a reasonable jury to decide.

New Orleans, Louisiana this 16th day of August, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] Rec. Doc. 788.