**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JAMES P. BECNEL                                    CIVIL ACTION

VERSUS                                             NO. 19-14536

LAMORAK INSURANCE CO., ET AL.                      SECTION "B"(5)

<u>ORDER AND REASONS</u>

Before the Court are several motions: defendant BMW of North America, LLC's motion for summary judgment (Rec. Doc. 458), defendant Ford Motor Company's motion for summary judgment (Rec. Doc. 436), defendant General Electric Company's motion for summary judgment (Rec. Doc. 358), defendant Foster Wheeler LLC's motion for summary judgment (Rec. Doc. 363), defendant ViacomCBS Inc.'s motion for summary judgment (Rec. Doc. 359), defendant Morse TEC's motion for summary judgment (Rec. Doc. 373), and defendant Navistar, Inc.'s motion for summary judgment (Rec. Doc. 464). Also before the court are plaintiffs' respective oppositions to each motion (Rec. Docs. 509, 510, 514, 516, 543, 537, 535), Huntington Ingalls, Incorporated's oppositions to each motion (Rec. Docs. 507, 520, 522, 529, 525, 526, 523), and filing defendants' replies in support of their respective motions (Rec. Docs. 565, 591, 611, 601, 599, 635). After consideration of argument from parties' counsel, applicable law and the entire record,

   **IT IS ORDERED** that defendant BMW of North America, LLC's motion for summary judgment (Rec. Doc. 458) is **DENIED**;

1

**IT IS FURTHER ORDERED** that defendant Ford Motor Company's motion for summary judgment (Rec. Doc. 436) is **DENIED;**

**IT IS FURTHER ORDERED** that defendant General Electric Company's motion for summary judgment (Rec. Doc. 358) is **DENIED;**

**IT IS FURTHER ORDERED** that defendant Foster Wheeler LLC's motion for summary judgment (Rec. Doc. 363) is **DENIED;**

**IT IS FURTHER ORDERED** that defendant ViacomCBS Inc.'s motion for summary judgment (Rec. Doc. 359) is **DENIED;**

**IT IS FURTHER ORDERED** that defendant Morse TEC's motion for summary judgment (Rec. Doc. 373) is **DENIED;**

**IT IS FURTHER ORDERED** that defendant Navistar Inc.'s motion for summary judgment (Rec. Doc. 464) is **DENIED;** and

**IT IS FURTHER ORDERED** that defendant Morse TEC's request for oral argument (Rec. Doc. 390) is **DENIED as unnecessary.**

I.   <u>**FACTS AND PROCEDURAL HISTORY**</u>

The facts of this case have been laid out in greater detail in previously issued Orders and Reasons and are adopted by reference herein. *See* Rec. Docs. 1038, 913.

On April 26, 2022, defendants General Electric Company ("General Electric"), Foster Wheeler, LLC ("Foster Wheeler"), Morse TEC ("BorgWarner"), and ViacomCBS Inc. ("Westinghouse") each filed separate motions for summary judgment asserting lack of causation evidence. Rec. Docs. 359, 358, 363, 373. Thereafter, defendants Ford Motor Company ("Ford"), BMW of North America

2

("BMW"), and Navistar, Inc. ("Navistar") quickly followed suit by filing motions for summary judgment on the same basis. Rec. Docs. 436, 458, 464.

On May 17, 2022, Huntington Ingalls, Inc. ("Avondale") filed oppositions to each motion. Rec. Docs. 507, 520, 522, 529, 525, 526, 523. On that same date, plaintiffs also filed oppositions to each motion for summary judgment. Rec. Docs. 509, 510, 514, 516, 543, 537, 535. Subsequently, defendants filed replies in support of their respective motion. Rec. Docs. 565, 591, 611, 601, 599, 635.

II.   **LAW AND ANALYSIS**

   **A. Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party.

*United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

**B. Causation Evidence**

This is a toxic torts case in which plaintiffs allege the decedent was exposed to asbestos while working with asbestos-containing products, and that this exposure caused his primary lung cancer. Under Louisiana law, in an asbestos exposure case, the claimant must show that (1) "he had significant exposure to the product complained of," and that (2) the exposure to the product "was a substantial factor in bringing about his injury."

*Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1091 (La. 2009) (quoting *Asbestos v. Bordelon, Inc.*, 726 So. 2d 926, 948 (La. App. 4 Cir. 1998)). The plaintiff bears the burden of proof on both elements. *Vodanovich v. A.P. Green Indus., Inc.*, 869 So. 2d 930, 932 (La. App. 4 Cir. 2004). He must "establish his claim to a reasonable certainty[;] mere possibility, and even unsupported probability, are not sufficient to support a judgment in plaintiff's favor." *Id.* at 934. "[A] plaintiff's burden of proof against multiple defendants in a long-latency case is not relaxed or reduced because of the degree of difficulty . . . in proving the contribution of each defendant's product to the plaintiff's injury. *Id.* at 933.

As to causation, the Fifth Circuit has explained that, "[e]ven if the plaintiff was only exposed to asbestos for a 'short period for an employer[,] and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma.'" *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting Rando, 16 So. 3d at 1091). To defeat an asbestos defendant's motion for summary judgment, a plaintiff "need only show that a reasonable jury could conclude that it is more likely than not that [plaintiff] inhaled defendant's asbestos fibers, even if there were only slight exposures," and that such exposures was a significant contributing factor to his injury. *Id.* (citing *Held v.*

*Avondale Indus., Inc.*, 672 So. 2d 1106, 1109 (La. App. 4 Cir. 1996)).

The substantive law that governs plaintiffs' claims is the law in effect when the alleged exposure occurred. *Rando*, 16 So. 3d at 1072. Relevant here is Louisiana products-liability law, which, prior to the enactment of the Louisiana Products Liability Act ("LPLA") in 1987, was summarized by the Louisiana Supreme Court in *Halphen v. Johns-Manville Sales Corp*., 484 So. 2d 110 (La. 1986); *see also Adams v. Owens-Corning Fiberglas Corp*., 2004-1589 (La. App. 1 Cir. 9/23/05), 923 So. 2d 118, *writ denied sub nom. Adams v. Owens-Corning Fiberglass Corp.*, 2005-2318 (La. 3/10/06), 925 So. 2d 519. Under Louisiana law, a plaintiff can recover against a manufacturer by proving that his/her injury was caused by a condition of the product existing at the time it left the manufacturer's control that rendered the product unreasonably dangerous in normal use. *Adams,* 923 So. 2d at 122; La. R.S. § 9:2800.54. This is a strict liability standard: "The plaintiff need not prove negligence by the maker in its manufacture or processing, since the manufacturer may be liable even though it exercised all possible care in the preparation and sale of its product." *Adams*, 923 So. 2d at 122.  Prior to the enactment of the LPLA, Louisiana law also categorized some products, including asbestos, as "unreasonably dangerous *per se*." *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110, 113-17 (La. 1986); *Hulin v.*

*Fibreboard*, 178 F.3d 316, 334 (5th Cir. 1999); *see also Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771, 793 (E.D. La. 2011) (retroactively applying the unreasonably dangerous per se theory of *Halphen* to a case where the decedent's claims against ExxonMobil arose out of work done in 1981 to 1983). "A product is unreasonably dangerous *per se* if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product." *Adams*, 923 So. 2d at 122. A manufacturer could be held liable for injuries caused by such a product even if the manufacturer did not know and reasonably could not have known of the danger. *Id.*

In *Halphen*, the Louisiana Supreme Court explained that, "[i]n order to recover from a manufacturer, the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control." 484 So. 2d at 113. At issue here is whether GE's product was "unreasonably dangerous," under any of the recognized theories of liability: (1) unreasonably dangerous in construction or composition, (2) unreasonably dangerous per se, (3) unreasonably dangerous in design, or (4) unreasonably dangerous for failure to warn. *See id.* at 113-15.

i.  <u>Foster Wheeler, General Electric, Navistar, and</u>
    <u>ViacomCBS' Motions for Summary Judgment</u>

Defendants collectively contend that the decedent's deposition testimony relied on by plaintiffs should be disregarded as the product of leading questions. Specifically, defendants wish to exclude the testimony of the decedent regarding his exposure to defendants' turbines and boilers. For example, Mr. Becnel was questioned as follows regarding the Westinghouse (ViacomCBS) turbines:

Q: Did you see insulators also insulating the turbines?

A: Yes, I did.

[Objection, form.]

Q: And what did it look like when the turbines were being insulated?

A: It looked just about the same as the other one. You had to do the cutting.

Q: Dusty?

A: The same thing.

Q: When you say "same thing", I need you to describe it.

[Objection, leading.]

A: Okay. When you'd cut the particles they were using, the dust was flying all over.[1]

Under Rule 611, this Court has a "large degree of discretion in overseeing the examination of witnesses." *Tercero v.*

---

[1] Rec. Doc. 359-2 at p. 48 (Deposition of James Becnel).

*Oceaneering Int'l, Inc.,* No. CV 17-7438, 2019 WL 969819, at *5
(E.D. La. Feb. 28, 2019).  Rule 611(c) states that "[l]eading
questions should not be used on direct examination except as
necessary to develop the witness's testimony.  Ordinarily, the
court should allow leading questions on (1) cross-examination; and
(2) when a party calls a hostile witness, an adverse party, or a
witness identified with an adverse party."

After reviewing the testimony at issue, the questions
defendants refer to are not leading questions. A leading question
is one that suggests the answer the witness is expected to give.
*State v. Lynch*, 94-0543 (La.App. 1st Cir.5/5/95), 655 So.2d 470,
476, *writ denied*, 95-1441 (La.11/13/95), 662 So.2d 466. Here,
plaintiffs' questioning of Mr. Becnel did not seek to illicit a
certain response. Instead, the questioning focused on asking the
decent to describe when and how the insulators were insulating the
defendants' boilers and/or turbines. Even assuming some of the
questions plaintiffs' counsel posed were leading in nature, the
decedent up in age and suffering for a degenerative condition,
namely lung cancer. Any such questions were utilized to help
develop the decedent's testimony, which is allowed under Rule
611(c).

Defendants also argue that Mr. Becnel's testimony should be
excluded because he provided contradictory statements on cross-
examination. They claim that on direct examination, Mr. Becnel

stated he recalled witnessing insulation being performed on the defendants' equipment, but on cross-examination he did not recall witnessing such work.

Not only have defendants cited no case law providing for such a premise that contradictory testimony cannot be used to defeat a motion for summary judgment, but the case they do cite is inapposite to what is before the Court. Defendants cite the Fifth Circuit's decision in *Hacienda Records, L.P. v. Ramos*, 718 Fed. App'x 223, 235 (5th Cir. 2018), for support. In *Hacienda*, the Circuit affirmed the granting of summary judgment for plaintiff, finding that the defendant could not provide competent evidence for his breach of contract claim. *Hacienda Records, L.P.,* 718 Fed. App'x at 235. The only evidence the defendant could provide was statements he made via his sworn declaration, which contradicted with the deposition testimony he provided four days prior. *Id.* The court refused to accept the inconsistent statements made by the defendant, noting that the defendant could not defeat summary judgment by utilizing testimony that impeaches, without explanation, his sworn testimony. *Id.*

The *Hacienda* case is distinguishable from the present matter. First, this case does not deal with a sham affidavit that plaintiffs proffered solely for the purpose of defeating summary judgment. The alleged contradictory statements also were not made in a sworn declaration taken after the decedent's deposition.

Instead, the decedent's statements were proffered during the same deposition, which occurred on August 29-30, 2019. Further, one cannot say that the decedent's statements are in fact contradictory. In both his responses, the decedent testified that he witnessed insulators placing insulation on the defendants' equipment. While his initial testimony referred to the equipment generally and his testimony on cross was confined to the equipment piping, both references confirm that he worked around insulators insulating the defendants' equipment. Accordingly, the decedent's testimony will not be excluded in our evaluation of defendants' pending motions.

a. Foster Wheeler's Motion for Summary Judgment

Defendant Foster Wheeler moves for summary judgment, seeking dismissal of all claims against it. Plaintiffs and Avondale oppose the motion. Foster Wheeler contends that plaintiffs have not produced any evidence that the decedent was exposed to asbestos from its boilers. However, this argument fails.

Another section of this Court has recently analyzed an argument by Foster Wheeler, similar to the one before us now. *See Cortez v. Lamorak Ins. Co*., No. CV 20-2389, 2022 WL 1320429, at *15 (E.D. La. May 3, 2022). In *Cortez*, defendant Foster Wheeler moved for summary judgment, arguing that the plaintiff could not provide sufficient evidence that he was exposed to asbestos from products it manufactured, sold, or supplied. *Id.* The Court denied

defendant's motion. *Id.* Relying on the deposition testimony of the decedent and the defendant's corporate representative, Thomas Schroppe, the Court found there was sufficient evidence for a reasonable jury to conclude that plaintiff inhaled asbestos attributable to Foster Wheeler. *Id.* Additionally, the Court determined that there remained issues of fact concerning whether the defendant could be held liable for supplying unreasonably dangerous products per se, and for failing to warn consumers. *Id.* The bench once again focused on the deposition testimony of Schroppe, who testified that Foster Wheeler purchased asbestos cloth and rope and shipped it to Avondale for use on its boilers. *Cortez*, 2022 WL 1320429, at *15. Because there was evidence the defendant supplied asbestos products to Avondale for use on its boilers, the Court denied defendant's motion for summary judgment. *Id.*

Here, there remain issues of fact regarding whether Foster Wheeler may be held liable for supplying asbestos products that were unreasonably dangerous *per se*, *see Halphen*, 788 F.2d at 275, or, for failing to warn of the asbestos-related dangers associated with the design of its boilers. *Halphen*, 484 So. 2d at 115. Plaintiffs have provided testimony of the decedent who testified that, while working at Avondale, he worked near people who insulated Foster Wheeler boilers. Rec. Doc. 535-3 at pp. 35-37, 40-41 (Perpetuation Deposition of James Becnel). He further

testified that the insulators' work generated dust, which he inhaled. *Id.* Decedent also stated that he knew the boilers were manufactured by Foster Wheeler because its name was on the boilers. Rec. Doc. 535-4 at p. 693 (Discovery Deposition of James Becnel). Furthermore, Foster Wheeler's corporate representative, Thomas Schroppe, testified that defendant supplied marine boilers to be installed in the engine rooms and were integrated into the ship by pipping. Rec. Doc. 535-18 at 39-42, 50-51 (Deposition of Thomas Schroppe). He also declared that the boilers required insulation to obtain a certain surface temperature. *Id.* at 51-52, 74. Based on this record, the Court finds that "a reasonable jury could conclude that it is more likely than not" that plaintiff inhaled asbestos attributable to Foster Wheeler. *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022); *Danos v. Avondale Indus., Inc.*, 2007-1094 (La. App. 4 Cir. 7/2/08), 989 So. 2d 160, *writ denied*, 2008-1814 (La. 10/31/08), 994 So. 2d 540 (reversing summary judgment in favor of Foster Wheeler because plaintiff established a genuine issue of fact regarding his exposure to asbestos from Foster Wheeler boilers).

Foster Wheeler further contends that, even if Mr. Becnel worked around asbestos associated with its products, Foster Wheeler is not legally responsible for those harms because it "did not manufacture, sell, supply[,] or install" the insulation on its boilers. Rec. Doc. 363. However, this argument also fails. There

remain issues of fact as to whether the defendant supplied asbestos products to Avondale for use on its boilers. Plaintiffs point to the deposition testimony of Avondale corporate representative, Burnett Bordelon, who declared that he worked as a superintendent of the Avondale insulation department for forty years. Rec. Doc. 535-13 at pp. 6-7 (Deposition of Avondale, through Burnett Bordelon). Bordelon further testified that Foster Wheeler boilers were insulated on-board the Lykes vessels and confirmed that Foster Wheeler supplied the insulation to Avondale. *Id.* at pp. 32-33, 36-37, 40, 58-59. Moreover, the decedent testified that although the insulation contained asbestos, he did not receive any warnings about asbestos hazards and there were no warnings on the equipment. Rec. Doc. 535-3 at 50-51 (Perpetuation deposition of James Becnel). Given this testimony that Foster Wheeler supplied asbestos insulation to Avondale, a reasonable jury may find that the defendant could be held liable for supplying that asbestos product and failing to warn.

Even assuming *arguendo*, plaintiffs lacked evidence that Foster Wheeler supplied asbestos insulation to Avondale, defendant could still be found liable under the principles expounded in the U.S. Supreme Court case of *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 203 L. Ed. 2d 373 (2019). In *DeVries,* the Court was faced with deciding whether a manufacturer has a duty to warn when its product requires later incorporation of a dangerous part for

14

the integrated product to function as intended. The dangerous part in that case was also asbestos. 139 S. Ct. at 993. After a thorough analysis, the bench held that manufacturers have no duty to warn in cases of mere foreseeability. *Id.* at 993-94. Instead, "the rule requires that manufacturers warn only when their product *requires* a part in order for the integrated product to function as intended." *Id.* Here, even if Foster Wheeler did not supply the asbestos insulation to Avondale, there is still evidentiary support that it knew its boilers required insulation and specified the use of asbestos insulation. *See* Rec. Doc. 535-18 at 51-52, 74 (Deposition of Thomas Schroppe) (declaring defendant's boilers required insulation to function properly); Rec. Doc. 535- 19 at 40 (Deposition of Danny Joyce) (testifying that Foster Wheeler required and specified the use of asbestos on its boilers at Avondale, including aboard the Lykes vessels.). Thus, defendant would still owe a duty to warn because it knew its boilers required insulation, and the insulation used would contain asbestos. Accordingly, defendant's motion for summary judgment is **DENIED**.

### b. General Electric's Motion for Summary Judgment

Defendant General Electric Company moves for summary judgment, seeking dismissal of all claims against it. Defendant first contends that plaintiffs have not produced evidence that the decedent worked near its turbine. But contrary to defendant's assertion, the record reflects that plaintiff worked around

15

General Electric turbines during his time at Avondale, and that he saw people conducting work on the turbines, including installing insulation. Rec. Doc. 537-3 at pp. 35-37, 40-41, 48 (Perpetuation Deposition of James Becnel). Plaintiff testified that the brands of turbines were GE and Westinghouse. *Id.* He then testified that, when he was around the turbines, the work on the turbines produced dust, and he breathed in the dust. *Id.* This evidence alone is sufficient to create an issue of fact as to whether plaintiff was exposed to products used in connection with the turbines.

Defendant further contends that, even if plaintiff worked around asbestos associated with its turbines, General electric is not legally responsible for those harms because it "did not manufacture, sell, supply[,] or install" the insulation for the turbines. Rec. Doc. 358. There are two distinct asbestos containing products associated with the defendant's turbines: (1) the asbestos gaskets that were used to connect high pressure turbines to low pressure turbines; and (2) the asbestos insulation.

Concerning the asbestos gaskets, defendant's corporate representative, David Skinner, testified that the component parts of General Electric's turbines included asbestos gaskets. Rec. Doc. 537-13 at 34 (Deposition of General Electric, through David Skinner). He also stated the process for erecting the turbines at Avondale involved connecting the high pressure ("HP") turbines and low pressure ("LP") turbines to each other using gaskets. *Id.* at

48-51. Skinner further declared that General Electric supplied the asbestos-containing gaskets necessary to make those connections. *Id.* at 52. Accordingly, the Court finds that this testimony raises an issue of fact as to whether the defendant supplied asbestos-containing gaskets in connection with the turbines that it provided to Avondale. If it directly supplied asbestos gaskets to Avondale, defendant may be held liable for supplying a product that is unreasonably dangerous *per se. See Halphen v. Johns-Manville Sales Corp.*, 788 F.2d 274, 275 (5th Cir. 1986) (noting that "the Supreme Court of Louisiana places asbestos in that category" of products that are unreasonably dangerous per se). There also remains an issue of fact regarding whether General Electric issued warnings in connection with the use of asbestos gaskets given the decedent's testimony regarding the lack of asbestos warnings on the equipment. *See* Rec. Doc. 537-3 at 50-51 (Perpetuation Deposition of James Becnel). Thus, the Court denies summary judgment as to the use of asbestos gaskets on General Electric's turbines.

Concerning the asbestos insulation, plaintiffs cite once again to Skinner's deposition testimony, in which he testified that defendant's turbines require the use of insulation. Rec. Doc. 537-13 at 140-42, 145 (Deposition of General Electric, through David Skinner). Skinner also stated that General Electric was aware that the turbines it sold to Avondale had to be insulated. *Id.* Additionally, Skinner admitted that asbestos was utilized to

17

insulate turbines during the pertinent period of Mr. Becnel's exposure. *Id.* at 169-70, 178. First and foremost, while asbestos-containing insulation may be unreasonably dangerous *per se*, plaintiffs have submitted no evidence that the defendant manufactured or supplied asbestos-containing insulation. The support provided merely shows that defendant was aware that insulation needed to be used with its turbines. This is not enough to create an issue of fact as to whether the defendant is liable for manufacturing and/or supplying an asbestos-containing product. Nonetheless, plaintiffs argue that General Electric can be held liable for its failure to warn of the dangers associated with asbestos insulation. According to plaintiffs, defendant was aware that asbestos insulation was to be utilized in connection with its turbines; and thus, had a duty to warn. We agree. See *DeVries,* 139 S. Ct. at 993-94. Accordingly, defendant is not entitled to summary judgment as to plaintiffs' failure-to-warn claims.

c. <u>ViacomCBS' Motion for Summary Judgment</u>

Defendant ViacomCBS ("Westinghouse") moves for summary judgment, seeking dismissal of all claims against it. Defendant first contends that plaintiffs have not produced evidence that the decedent worked near its turbine. But contrary to defendant's assertion, the record reflects that plaintiff worked around Westinghouse turbines during his time at Avondale, and that he saw people conducting work on the turbines, including installing

insulation. Rec. Doc. 543-3 at pp. 35-37, 40-41, 48 (Perpetuation Deposition of James Becnel). Plaintiff testified that the brands of turbines were GE and Westinghouse. *Id.* He then testified that, when he was around the turbines, the work on the turbines produced dust, and he breathed in the dust. *Id.* This evidence alone is sufficient to create an issue of fact as to whether plaintiff was exposed to products used in connection with the turbines.

Defendant further contends that, even if plaintiff worked around asbestos associated with its turbines, Westinghouse is not legally responsible for those harms because it "did not manufacture, sell, supply[,] or install" the insulation for the turbines. Rec. Doc. 359. There are two distinct asbestos containing products associated with the defendant's turbines: (1) the asbestos gaskets that were used to connect high pressure turbines to low pressure turbines; and (2) the asbestos insulation.

Concerning the asbestos gaskets, plaintiffs cite to the deposition of defendant's corporate representative, Roy Belanger, who testified that asbestos-containing gaskets were utilized on the exterior of the casings for those turbines that Westinghouse supplied to the Lykes vessels that were being constructed at Avondale. Rec. Doc. 543-13 at pp. 76-78 (Deposition of CBS Corporation, through Roy Belanger). Belanger further testified that the cross-over piping between the HP turbines and the LP turbines also utilized asbestos gaskets and was supplied by

Westinghouse. Id. at 55-56, 79-81, 148-49. Given this evidentiary support, the Court finds this testimony raises an issue of fact as to whether the defendant supplied asbestos-containing gaskets in connection with the turbines that it provided to Avondale.

Concerning the asbestos insulation, plaintiffs cite the testimony of Belanger, who stated that Westinghouse was aware that the piping connecting the turbines to other equipment would have to be insulated. Rec. Doc. 543-13 at pp. 34-35 (Deposition of CBS Corporation, through Roy Belanger). Belanger further testified that in the 60s and 70s, Westinghouse was aware that asbestos-containing thermal insulation was used on its turbines. *Id.* at 109-110. Relying on this testimony, plaintiffs argue that Westinghouse can be held liable for its failure to warn of the dangers associated with asbestos insulation. According to plaintiffs, defendant was aware that asbestos insulation was to be utilized in connection with its turbines; and thus, had a duty to warn. For the reasons discussed in subsection (a) *supra*, we find this claim must stand. See *DeVries,* 139 S. Ct. at 993-94. Accordingly, defendant is not entitled to summary judgment as to plaintiffs' failure-to-warn claims arising out of third-party use of asbestos-containing insulation on its turbines.

ii.  Morse TEC's Motion for Summary Judgment

Plaintiffs have provided sufficient evidentiary support that the decedent was exposed to asbestos from Borg-Warner manufactured

clutches. Rec. Doc. 514. They point to the deposition testimony of the decedent, who testified that during the 50s, 60s, and 70s, he regularly worked with and replaced Borg-Warner clutches. Rec. Doc. 514-4 at pp. 769-70 (Discovery Deposition of James Becnel). He also declared that he knew the clutches were Borg-Warner clutches because the clutches bore the name Borg-Warner on the clutch facings. *Id.* at 227. Additionally, plaintiffs cite to the deposition testimony of defendant's corporate representative, Richard Anderson, who testified that prior to 1982, all Borg-Warner clutches utilized in passenger cars and trucks contained asbestos. Rec. Doc. 514-7 at pp. 34-35 (Deposition of Richard Anderson). Anderson further declared that neither the clutches nor the boxes they arrived in provided warnings prior to 1986. *Id.* at 65. Given the clutches were stamped with the defendant's name, it supports plaintiffs' contention that Borg-Warner manufactured this product. As the manufacturer, Borg-Warner can be held liable for distributing an unreasonably dangerous product *per se* and for failing to warn consumers of the dangerous nature of its product.

The decedent also described how he would be exposed to asbestos from the clutches, including how he would blow the dust with compressed air and sweep up the clutch pieces from the floor. Rec. Doc. 514-4 at pp. 769-71 (Discovery Deposition of James Becnel); Rec. Doc. 514-5 at pp. 88-91 (Perpetuation Deposition of James Becnel). Furthermore, plaintiffs have provided sufficient

support from their experts, who have opined that: (1) the decedent was exposed to significant concentrations of asbestos due to his work with Borg-Warner clutches; and (2) his exposure was a contributing cause of his lung cancer. Rec. Doc. 514-9 at p. 21 (Deposition of Frank Parker); Rec. Doc. 514-16 at para. 11 (Declaration of Dr. Rodney Landreneau); Rec. Doc. 514-11 (Affidavit of Stephen T. Kraus, M.D.). Accordingly, plaintiffs have satisfied their burden of proving causation and their theories of liability as to this defendant's products.

Morse TEC argues that the decedent never testified to manipulating Borg-Warner clutches, and without sanding, filing, or grinding the clutches, there was no way the decedent could have encountered dust. Plaintiffs disagree and cite to the testimony of their expert, Frank Parker, who testified that Mr. Becnel would have sustained exposures from handling the boxes the clutches came in, as well as the clutches themselves. Rec. Doc. 514-9 (Deposition of Frank Parker). However, defendant seeks to challenge the deposition testimony of Parker. Defendant argues that Parker's testimony does not support plaintiffs' position because on cross-examination Parker admitted that the decedent would not have had an exposure if he did not sand, grind, or file the clutches in question. While Parker did make such a statement, it was made in response to hypothetical questions defense counsel posed. Furthermore, Parker did not explicitly state that the decedent

would not have been exposed to asbestos if he did not manipulate the clutches. Rather, Parker testified that the decedent's exposure would have merely been limited to the exposures received from handling the boxes. In any event, the decedent would have still been exposed to asbestos from Borg-Warner clutches.

### iii. BMW's Motion for Summary Judgment

BMW contends that Mr. Becnel could not have encountered any brakes sold or supplied by BMW because he did not work on new BMW vehicles. Defendant also asserts there is no evidence that the decedent purchased replacement brake parts from a BMW dealership. We do not agree.

Plaintiffs have established that the decedent was exposed to BMW vehicles and brake products. They have pointed to several deposition transcripts of the decedent and his brother, Thomas Becnel, all establishing the decedent worked on new BMW vehicles. Specifically, the decedent testified that he performed brake jobs, tune-ups, and shock work on BMWs in the 1960s, 1970s, and 1980s. Thomas Becnel also declared that he and his brother would perform brake jobs on new BMWs. This evidence suggests that the decedent worked on new BMWs and purchased parts from BMW dealerships. Thus, there is a strong likelihood that BMW is the manufacturer of the brakes Mr. Becnel encountered.[2]

---

[2] BMW does not contend that the brakes found in their vehicles were manufactured by some other entity. Rather, defendant only argues that plaintiffs cannot meet

Plaintiffs also point to the deposition of BMW's corporate representative, William Skully. Rec. Doc. 510-7 (Deposition of William Skully). Skully testified that prior to model year 1984, all brakes in BMW vehicles contained asbestos. *Id.* at 31-32. This time frame coincides with the years the decedent alleges he worked on BMW vehicles and was exposed to asbestos. Skully also stated that BMW sold asbestos replacement brakes until 1989. Rec. Doc. 510-7 at p. 83 (Deposition of William Skully). This statement reinforces the decedent's contention that he was exposed to asbestos from BMW replacement brakes.

There is also ample testimony describing in detail how the decedent would perform brake jobs, and thereby be exposed to asbestos. Rec. Doc. 510-5 at pp. 60-61(Perpetuation Deposition of James Becnel). Essentially, the decedent testified that he would have to utilize an air hose and spray the brake drum, which caused dust to "fly all over the place." *Id.* The decedent also testified that he had to sweep up all the dust into a dustpan after each job. *Id.* at 91. Because asbestos is categorized as unreasonably dangerous *per se*, and plaintiffs have provided sufficient evidence that the decedent encountered asbestos containing BMW products, this issue is not suitable for summary judgment. *See Halphen*, 484 So. 2d at 113-17.

---

their burden of proof because there is no evidence the decedent worked on "new" BMWs.

Furthermore, plaintiffs have also established sufficient evidence under the failure to warn theory. As the likely manufacturer, BMW was required to warn about any danger related to the design of is product. Here, plaintiffs once again point to Skully's testimony, in which he confirmed that he was not aware of any asbestos hazard warnings that were submitted prior to November 1986. Rec. Doc. 510-7 at pp. 66-67 (Deposition of William Skully). Plaintiff also cite to the depositions and reports of their experts Frank Parker, Dr. James Millette, Dr. Rodney Landreneau, and Dr. Stephen Kraus. Rec. Doc. 510. Parker opined that Mr. Becnel was exposed to asbestos at significant levels during his work with BMW brakes. Rec. Doc. 510-9 at p. 21 (Deposition of Frank Parker); Rec. Doc. 510-10 at para. 14-15 (Affidavit of Frank Parker). Likewise, Dr. Kraus testified that the decedent's occupational exposure to asbestos from BMW vehicles were contributing factors to his lung cancer. Rec. Doc. 510-11 at 13, 18 (Affidavit of Dr. Stephen Kraus) and sub exhibit A Expert Report at para. 45,50. After drawing all reasonable inferences in favor of the plaintiffs, the Court finds there are genuine issues of fact as to whether BMW had a duty to warn about to asbestos in its brakes.

iv.  <u>Ford's Motion for Summary Judgment</u>

Defendant Ford contends all plaintiffs' claims against it should be dismissed because they cannot satisfy their burden of proving any of the brakes or clutches removed from Ford vehicles

were original equipment manufacturer ("OEM") parts. Specifically, Ford argues there is no evidence that Mr. Becnel worked on new Ford vehicles, and thus no support that he encountered Ford manufactured parts. Plaintiffs, however, have provided sufficient evidence that the decedent regularly performed brake and clutch work on *new* and *older* model Ford vehicles. Rec. Doc. 509-4 at pp. 767 (Discovery Deposition of James Becnel). In fact, the decedent testified that during the 1960s, he worked on both new vehicles with original brake parts as well as older vehicles. Rec. Doc. 509-5 at pp. 78-79, 80 (Perpetuation Deposition of James Becnel). Mr. Becnel also described the process by which he would perform brake jobs. Rec. Doc. 509-5 at pp. 60-61, 73 (Perpetuation Deposition of James Becnel). In essence, he stated that he would use compressed air to "blow" the brake drums, which would cause dust to fly everywhere. *Id.* He also testified that performing the clutch work would also result in of a lot of dust flying everywhere. *Id.* Mr. Becnel further testified that he would obtain replacement parts directly from Ford when he worked on older model Ford vehicles. *Id.* at 80-81.

It is also undisputed that prior to 1983, all Ford cars and trucks contained asbestos brakes and clutches. *See* Rec. Doc. 436-1, at p. 6 (Ford admitting that it "began phasing out asbestos containing products in 1983); Rec. Doc. 509-7 at pp. 33-35, 50 (Deposition of Ford, through Mark Taylor) (testifying that prior

to 1983, all Ford cars and trucks, excluding the police interceptor vehicle, contained asbestos brakes and clutches). Plaintiffs have also pointed to the reports and depositions of their experts, who have opined the decedent's exposure to asbestos from Ford vehicles contributed to his development of lung cancer. *See e.g.*, Rec. Doc. 509-11 at para. 13, 18 (Affidavit of Stephen Kraus, M.D.). Because asbestos containing products have been deemed unreasonably dangerous *per se*, Ford can be held liable if found to be the manufacturer of the products alleged to have exposed the decedent to asbestos. Considering this evidence in the light most favorable to the non-movant plaintiffs have provided sufficient summary judgment evidence that: (1) the decedent was exposed to asbestos from Ford manufactured brakes and/or clutches because he worked on new Ford vehicles; and (2) that the resulting exposure contributed to his development of lung cancer

Plaintiffs also argue that Ford can be held liable under the failure to warn theory of liability. We agree. See *DeVries,* 139 S. Ct. at 993-94. Ford had a duty to warn of the dangers associated with the products integrated into its vehicles, *i.e.*, asbestos-containing brakes and/or clutches. *Id.* Because plaintiffs have provided competent summary judgment evidence establishing the decedent was exposed to asbestos from Ford vehicles, plaintiffs' claims stand. Accordingly, Ford's motion for summary judgment is **DENIED**.

v.   <u>Navistar, Inc.'s Motion for Summary Judgment</u>

Navistar, Inc. (f/k/a International Harvester Company) contends that plaintiffs cannot present any evidence that the decedent had "frequent, regular" exposures to asbestos from Navistar vehicles or products, such that it was a substantial factor in causing his lung cancer. Rec. Doc. 464. Like BMW's argument, Navistar also argues that plaintiffs cannot establish that any of the brakes and clutches that he removed were from "new" vehicles in that the parts would have been OEM (Original Equipment Manufacturer) parts incorporated at the factory. However, plaintiffs present evidence to the contrary. They begin by pointing to the deposition of the decedent, in which he testified that he regularly worked as a mechanic on Navistar (International) trucks, including changing out brakes and clutches. Rec. Doc. 516-4 at pp. 380, 765-67(Discovery Deposition of James Becnel). Mr. Becnel also declared that he worked on both new and old model trucks. Rec. Doc. 516-5 at p. 79-80 (Perpetuation Deposition of James Becnel). He further testified that he obtained replacement parts directly from International. Id. at 80-81; Rec. Doc. 516-4 at pp. 266, 345 (Discovery Deposition of James Becnel). Additionally, the decedent stated that the trucks he worked on were part of the Coca-Cola fleet of trucks and the model years were between the 1960s and

28

early 1970s. Rec. Doc. 516-4 at pp. 365-68 (Discovery Deposition of James Becnel).

There is also ample testimony describing in detail how the decedent would perform brake jobs, and thereby be exposed to asbestos. Rec. Doc. 510-5 at pp. 60-61 (Perpetuation Deposition of James Becnel). Essentially, the decedent testified that he would have to utilize an air hose and spray the brake drum, which caused dust to "fly all over the place." *Id.* The decedent also testified that he had to sweep up all the dust into a dustpan after each job. *Id.* at 91. Plaintiffs also cite to the deposition testimony of Navistar's corporate representative to support their contention that defendant's brakes and clutches contained asbestos. *See* Rec. Doc. 516 at p. 3. They cite to the testimony of Roy Zeitlow, who testified asbestos-free brakes were not even available for any truck until the late 1970s or early 1980s. Rec. Doc. 516-8 at pp. 177-78 (Deposition of Navistar, Inc., through Roy Zeitlow). Regarding International clutches, Zeitlow further declared that asbestos-free clutches were not available until the early 1980s. *Id.* at 193-94.

Moreover, plaintiffs also cite to the depositions and reports of their experts Frank Parker, Dr. James Millette, Dr. Rodney Landreneau, and Dr. Stephen Kraus. Rec. Doc. 516. Parker opined that Mr. Becnel was exposed to asbestos at significant levels that increased his risk of developing lung cancer due to his work with

International brakes and clutches. Rec. Doc. 516-9 at p. 22 (Deposition of Frank Parker); Rec. Doc. 516-10 at para. 14 (Affidavit of Frank Parker). Likewise, Dr. Kraus opined that Mr. Becnel had significant occupational exposure to asbestos from Navistar vehicles and that these exposures were a significant contributing factor in the development of his lung cancer. Rec. Doc. 516-11 at 13, 18 (Affidavit of Dr. Stephen Kraus) and sub exhibit A Expert Report at para. 45,50. Given this evidentiary support, a reasonable jury may find the decedent was exposed to defendant's asbestos-containing brakes and clutches during the period alleged and the exposure significantly contributed to his development of lung cancer.

Furthermore, plaintiffs have provided sufficient evidence in support of their failure to warn theory. As the vehicle manufacturer, Navistar was required to warn about any danger related to the design of its vehicles, as well as any integrated part that were required to be installed. According to the decedent, defendant's products contained no warning signs nor were there any warnings issued by Navistar. Rec. Doc. 516-5 at p. 98 (Perpetuation Deposition of James Becnel). After drawing all reasonable inferences in favor of the plaintiffs, the Court finds there are genuine issues of fact as to whether Navistar had a duty to warn about to asbestos in its brakes.

C. **Plaintiffs Experts are not Required to Provide Dose Calculations**

Defendants Ford, BMW, and Morse TEC spend a great deal of time arguing plaintiffs' experts' opinions should be rejected because they did not perform any dose calculations. Rec. Docs. 514, 509, 510. The Court finds such a requirement does not exist under Louisiana law.

Louisiana courts require the claimant in an asbestos case to show that he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury. *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 168 So.3d 556, 565-66 (La.App. 1 Cir.2014); *see also Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556, 564 (E.D. La. 2015). "In meeting this burden of proof, the plaintiff is not required to prove the quantitative level of exposure, i.e., the exact or cumulative dose of asbestos.... Rather, a qualitative evaluation of the exposures to asbestos, *i.e.*, the level, frequency, nature, proximity, and duration of the exposures at issue, can sufficiently prove causation." *Id.*

Here, plaintiffs' experts' lack of information about the specific degree of the decedent's exposure to the various defendants' brakes and/or clutches is irrelevant. As discussed *supra*, plaintiffs have provided minimally sufficient and reliable

evidence regarding Mr. Becnel's exposure to asbestos at the Becnel garage to raise a genuine issue of material fact. Moreover, the experts need not know whether the asbestos concentrations relative to each defendants' products reached a particular level in order to offer opinions as to causation. *See Freeman v. Fon's Pest Mgmt,* 17-1846 (La. 2/9/18), 235 So.3d 1087 ("*Daubert* does not require an expert provide a quantitative assessment to prove causation."); *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 77 So.3d 339, 359 (La.App. 1 Cir.2011) (citing *Rando v. Anco Insulations, Inc.*, 16 So.3d 1065, 1091 (La.2009)) ("[W]e cannot find, nor have we been directed to, any authority for the trial court's determination that a plaintiff must prove or that an expert must know the 'dose' of asbestos as to each particular defendant in order to establish causation."). Plaintiffs needed only to show that a reasonable jury could conclude that it was more likely than not that Mr. Becnel inhaled defendants' asbestos containing products, no matter how slight the exposure. *See Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting *Held v. Avondale Indus., Inc.*, 95-1788, p. 5 (La. App. 4 Cir. 4/3/96), 672 So. 2d 1106, 1109.). The evidence provided satisfies their burden of proof.

New Orleans, Louisiana this 25th day of August, 2022

SENIOR UNITED STATES DISTRICT JUDGE