**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JAMES P. BECNEL                           CIVIL ACTION

VERSUS                                    NO. 19-14536

LAMORAK INSURANCE CO., ET AL.             SECTION "B"(5)

<u>ORDER AND REASONS</u>

Before the Court are several motions filed by defendants who allegedly manufactured, supplied and/or used asbestos containing products in brakes and clutches for vehicles. Plaintiff-decedent James P. Becnel allegedly installed, maintained, removed or otherwise worked directly on and around the latter products. Moving defendants here will be collectively referred to as either defendant(s) or movant(s).

Specifically, we have defendant BMW of North America, LLC's motion for summary judgment (Rec. Doc. 369), defendant Volkswagen Group of America, Inc.'s motion for summary judgment (Rec. Doc. 370), defendant Honeywell International Inc.'s motion for summary judgment (Rec. Doc. 456), plaintiffs' respective oppositions to each motion (Rec. Docs. 511, 513, 512), Huntington Ingalls, Incorporated's oppositions to each motion (Rec. Docs. 518, 508, 528), and filing defendants' replies in support of their respective motions (Rec. Docs. 608, 606, 593).

Also before the Court are several motions *in limine* filed by defendants Bayer CropScience, Inc. (Rec. Docs. 740, 741, 742), BMW

1

of North America, LLC (Rec. Doc. 735), Honeywell International
Inc. (Rec. Doc. 731), Ford Motor Company (Rec. Docs. 722, 723,
716), Volkswagen Group of America, Inc. (Rec. Doc. 739), Foster-
Wheeler LLC (Rec. Docs. 693, 726, 730), General Electric Company
(Rec. Docs. 702, 705), and ViacomCBS Inc. (Rec. Docs. 727, 729),
plaintiffs' respective oppositions to each motion (Rec. Docs. 816,
854, 851, 900, 850), and filing defendants' replies in support of
their respective motions (Rec. Docs. 1000, 997, 992, 968, 978,
986, 1006, 1008).

After hearing oral arguments from pertinent parties and due
consideration of the law and entire record, and for assigned
reasons infra, **IT IS ORDERED** that:

1. Defendant BMW of North America, LLC's motion for summary
judgment (Rec. Doc. 369) is **DENIED;**

2. Defendant Volkswagen Group of America, Inc.'s motion for
summary judgment (Rec. Doc. 370) is **DENIED;**

3. Defendant Honeywell International Inc.'s motion for
summary judgment (Rec. Doc. 456), which was joined by Ford Motor
Company ("Ford"), Pneumo Abex, LLC ("Abex"), and Morse TEC LLC
("Morse") (Rec. Docs. 354, 371, 379-381), is **DENIED;** and

**IT IS FURTHER ORDERED** that defendants' motions *in limine* (Rec.
Docs. 693, 702, 705, 716, 722, 723, 726, 727, 729, 730, 731, 735,
739, 740, 741, 742) are **DENIED, provided** causation opinion evidence

is limited to cumulative exposure(s) to asbestos, not just "any" exposure.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Facts of this case have been laid out in greater detail in previously issued Orders and Reasons and are adopted by reference herein. *See* Rec. Docs. 1038, 913.

On April 26, 2022, defendants BMW of North America, LLC ("BMW") and Volkswagen Group of America, Inc. ("Volkswagen") each filed separate motions for summary judgment asserting lack of expert causation evidence. Rec. Docs. 369, 370. Thereafter, defendant Honeywell International, Inc.("Honeywell") quickly followed suit by filing its motion for summary judgment on the same basis. *See* Rec. Doc. 456. As noted earlier, Honeywell's motion was joined by Ford Motor Company ("Ford"), Pneumo Abex, LLC ("Abex"), and Morse TEC LLC ("Morse"). *See* Rec. Docs. 354, 371, 379-381.

On May 17, 2022, Huntington Ingalls, Inc. ("Avondale") filed oppositions to each motion. Rec. Docs. 518, 508, 528. On that same date, plaintiffs also filed oppositions to each motion for summary judgment. Rec. Docs. 511, 513, 512. Thereafter, on May 25, 2022, BMW, Volkswagen, and Honeywell (collectively "defendants") filed replies in support of their respective motion. Rec. Docs. 608, 606, 593.

On June 6, 2022, several defendants filed motions *in limine*, seeking to exclude and/or limit the testimony of plaintiffs' experts. Rec. Docs. 693, 702, 705, 716, 722, 723, 726, 727, 729, 730, 731, 735, 739, 740, 741, 742. Subsequently, plaintiffs filed oppositions to each motion on June 14, 2022. Rec. Docs. 816, 854, 851, 900, 850.  On June 22, 2022, defendants filed replies in support of their motions. Rec. Docs. 1000, 997, 992, 968, 978, 986, 1006, 1008.

II.  **LAW AND ANALYSIS**

  A. **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

**B. Prematurity of Defendants' Motions for Summary Judgment**

Avondale contends defendants' motions are premature because they request entry of judgment only if we grant the pending Daubert motions. See Rec. Docs. 508, 518, 528.

Per the scheduling order (Rec. Doc. 188), the parties' deadline for filing case dispositive motions and Daubert motions was on May 11, 2022. However, due to ongoing expert discovery, this Court extended the deadline to file Daubert motions to August 1, 2022. Rec. Doc. 976 (Status Conference Minute Entry). Because the case dispositive motion deadline was not extended, defendants

were required to file their motions for summary judgment by that date, even if they had not yet filed their Daubert motions.

Furthermore, this Court has on several occasions evaluated and ruled on the admissibility of expert testimony while simultaneously making a summary judgment determination. *See Murphy v. BP Expl. & Prod. Inc.,* No. CV 13-1031, 2022 WL 1460093 (E.D. La. May 9, 2022) (evaluating defendants' motion in limine to exclude opinions of plaintiff's medical expert and defendants' motion for summary judgment contemporaneously.); *Schindler v. Dravo Basic Materials Co., Inc.,* No. CV 17-13013, 2019 WL 446567 (E.D. La. Feb. 5, 2019), aff'd, 790 F. App'x 621 (5th Cir. 2019) (same); *see also McGill v. BP Expl. & Prod., Inc.,* 830 F. App'x 430 (5th Cir. 2020) (affirming summary judgment against a Deepwater Horizon plaintiff in a BELO case after plaintiff's medical causation expert was excluded for failing to satisfy Fed. R. Civ. P. 702 and Daubert); *Hill v. GEO Grp., Inc.,* No. 1:18-CV-01363, 2021 WL 6053783 (W.D. La. Dec. 21, 2021), *appeal dismissed sub nom. Hill v. GEO Grp.,* No. 22-30046, 2022 WL 2914739 (5th Cir. Mar. 15, 2022). We find no issue with performing the same concurrent analysis in this matter. Accordingly, the subject motions for summary judgment are not premature.

## C. Admissibility of Expert Testimony

A qualified expert witness may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help

6

the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The district court plays an important gatekeeping role by verifying that expert testimony meets this threshold standard of reliability before the jury hears it. *See, e.g., Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**D. Defendants' Motions to Exclude and/or Limit Plaintiffs' Experts' Testimony**

In this toxic tort case plaintiffs allege Mr. Becnel was exposed to asbestos while working with asbestos-containing products, and that such exposures caused his primary lung cancer. Accordingly, plaintiffs must show general causation—that asbestos can cause lung cancer — and specific causation — that the decedent's exposures caused his lung cancer. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).

General causation is whether a substance can cause a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury. *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 351 (5th Cir. 2007). Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible

general-causation evidence. *Id.* Thus, there is a two-step process in examining the admissibility of causation evidence in toxic tort cases. *Id.* First, the district court must determine whether there is general causation. *Id.* Second, if it concludes that there is admissible general-causation evidence, the district court must determine whether there is admissible specific-causation evidence. *Id.*

While generally recognized that mesothelioma is a form of cancer associated with even a slight exposure to asbestos per *Held v. Avondale Indus., Inc.*, 95-1788 (La. App. 4 Cir. 4/3/96), 672 So. 2d 1106, 1107-09, there is a divergent of opinions on whether and to what degree of exposure could cause lung cancer. While science has failed to establish that any specific dosage of asbestos causes injury, Plaintiffs posit their experts' general causation opinions are based upon published medical, scientific, and regulatory literature that are consistent with reliable information showing potential harms associated with exposures to chrysotile and amphibole forms of asbestos fibers and cancer, including lung cancer.[1]  *Wells v. SmithKline Beecham Corp.,* 601 F.3d 375, 378 (5th Cir.2010) ("Although there are 'no certainties in science,' the expert must present conclusions 'ground[ed] in

---

[1] As an example, *see* Rec. Docs. 511-20 (Nicholson, WJ et al. The Carcinogenicity of Chrysotile Asbestos, at p. 420); Rec. Doc. 511-21 (Landrigan PJ et al. The Hazards of Chrysotile Asbestos: A Critical Review. Industrial Health. 1999, 37:271-280, at p. 273); Rec. Doc. 511-22 (Lemen RA et al. Epidemiology of Asbestos-Related Diseases. Environmental Health Perspectives. Vol. 34, pp. 1-11. 1980, at pp. 4-7). *See e.g.*, the criteria of the Helsinki Consensus Report. Rec. Doc. 900-30, and pp. 248- 258, 377-379.

the methods and procedures of science.' " (alteration in original) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) 113 S.Ct. 2786).

To show specific causation in a toxic torts case, a plaintiff must present "scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999). The law does not require a plaintiff to show the precise level of his exposure to the toxic substance to hold a defendant liable. *Id.* at 671. Likewise, for an expert's specific causation opinion to be reliable, the opinion need not include a calculation of the precise level of the plaintiff's exposure. *Id.* But Rule 702(b) requires an expert to base their opinion on sufficient information about the circumstances or level of the plaintiff's exposure attributable to the defendant's negligence that goes beyond a general statement that the plaintiff was exposed to some amount of a toxic substance. Performing a differential diagnosis or a differential etiology is a widely accepted method which medical experts address specific causation enquiries. *See, e.g., In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 758 (3d Cir. 1994).

Plaintiffs' experts, and specifically Dr. S. Terry Kraus, have rendered specific opinions that Mr. Becnel's lung cancer was caused by his cumulative asbestos exposure over decades of daily

working directly on defendants' asbestos containing brakes and clutches. That work led to the emission of asbestos dust/fibers during work on those products at his auto mechanic shop. Kraus' opinions—as expressed in his affidavit, report and deposition—are based, non-exclusively, on a review of the medical records, deposition of Mr. Becnel, exposure history, direct consultations with Mr. Becnel and family members, on the expert report of industrial hygienist Frank Parker, III, Dr. James Milliette, and on reliable published studies and materials.[2]  Dr. Kraus employed acceptable methods for determining causation. *See e.g.*, the criteria of the Helsinki Consensus Report. Rec. Doc. 900-30, and pp. 248- 258, 377-379. Additionally, he considered and compared Mr. Becnel's medical history, objective tests results, causes for symptoms, and determined the asbestos exposures was more likely

---

[2] See for example, Rec. Doc. 900-9, pp. 15 thru 19 - Dr. Kraus' Report.

the substantial causative factor than cigarette smoking.[34] Id.  In view of the foregoing, Dr. Kraus gave a reliable differential diagnosis.

"A reliable differential diagnosis typically, though not invariably, is performed after physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests, and generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 468 (5th Cir.2012) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir.1999)) (internal quotation marks omitted).  Dr. Kraus

---

[3]   Dr. Kraus gave the following detailed answer in response to the following deposition question:
"So it's your opinion, in Mr. Becnel's case, that the diagnosis of centrilobular emphysema in his case was due to his asbestos exposure, not his history of cigarette smoking?     A.    Correct.  As well as the round atelectasis that he had, the plate atelectasis that he had and the bilateral calcified pleural plaques, yes;  "I want you to look at this and the reason I'm glad you brought this up because when he had his PET scan done on … March 19th, 2019, the PET scan showed that he had lymph nodes in his mediastinum, which if you look at his lungs would be in between the lung area and -- and just above the heart. He also had the right adrenal, and if you look at the right kidney, the right adrenal would be right above the right kidney, so he had spread to the abdomen. Unfortunately, he also had spread of his cancer to the second and the fifth thoracic vertebra and the left femur and sacrum.  Sacrum, you know, that's your bone right back here (indicated).  And was in significant amount of pain, because along with everything else you've shown, his lung cancer at that time was wildly metastatic, and at that point in time, he was a Stage 4 carcinoma lung and was in a -- a preterminal state." Rec. Doc. 900-30 Dr. Kraus deposition at pp. 127-128; see also, pp. 65-82, 248- 258, and 377-379.
[4] Rec. Doc. 900-9, p. 15, ¶ 52: "The medical evidence shows that James Becnel began to sustain tissue damage shortly after the inhalation of asbestos fibers, and distinct bodily injury occurred at the time of the
occupational or para occupational exposure to asbestos. (172, 173, 175)." Quote from Dr. Kraus' report.

considered the scientifically plausible causes of Mr. Becnel's lung cancer, *i.e.*, asbestos exposure and cigarette smoking. He then found that cigarette smoking was the least plausible cause and asbestos exposure as the most likely cause. *Glastetter v. Novartis Pharm Corp.*, 252 F.3d 986, 989 (8th Cir. 2001); *see also Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1195 (11th Cir. 2010); *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 178 (6th Cir.2009). Defendants' reliance upon weaknesses in, inconsistencies with, and contrary evidence to Dr. Kraus's diagnosis can be ably addressed at trial. Ultimately, whether Becnel was exposed to respirable asbestos which was a significant contributing cause or aggravation of his lung cancer are disputed issues of fact.

Furthermore, the Bradford Hill factors provide a reliable mechanism to determine general causation. *See e.g., Dunn v. Sandoz Pharm. Corp.*, 275 F. Supp. 2d 672, 677 (M. D. N. C. 2003); *In re Viagra Prod. Liab. Litig.*, 658 F. Supp. 2d 936, 942 (D. Minn. 2009); *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 780 (E. D. La. 2011). The Bradford Hill criteria are: (1) temporal relationship, (2) strength of the association, (3) dose response, (4) replication of the findings, (5) biological plausibility, (6) consideration of alternative explanations, (7) cessation of exposure, (8) specificity of the association, and (9) consistency with other knowledge. *See* Federal Judicial Center, REFERENCE

MANUAL ON SCIENTIFIC EVIDENCE at 600 (3d ed. 2011). It is not necessary that all nine factors be met before causation is established. *Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771 (E.D. La. 2011); *In re Viagra Prods. Liab. Litig.*, 658 F.Supp.2d 936, 946 (D. Minn. 2009) *accord Neurontin*, 612 F. Supp. 2d at 133 (noting that "in the context of a general causation challenge, failure to satisfy the Bradford Hill criteria does not doom admission under Daubert").

Dr. Kraus testified via affidavit that he agrees and relies on the interpretation and application of the Bradford Hill criteria posited by Dr. Richard A. Lemen in, "Chrysotile Asbestos as a Cause of Mesothelioma: Application of the Hill Causation Model."; *see also* Lemen, Richard A. Chrysotile Asbestos as a Cause of Mesothelioma: Application of the Hill Causation Model, *Int. J. Occup Environ Health*, Vol. 10, No. 2, Apr./June 2004. In that paper, Dr. Lemen found that exposure to chrysotile asbestos can cause asbestosis and lung cancer in addition to gastro-intestinal cancer, pleural mesothelioma, and peritoneal mesothelioma.

Dr. Kraus also relies on the Helsinki Consensus in support of his general causation opinions. The Helsinki Consensus Report provides that "[t]he presence of asbestosis is an indicator of high exposure…. Asbestosis…can be used to attribute a substantial causal or contributory role to asbestos for an associated lung cancer." (*See* Helsinki Consensus Rep "Asbestos, asbestosis and

cancer: The Helsinki criteria for diagnosis and attribution. *SC and J Work Environ Health* 1997. The participants recognized the general causation between exposure to asbestos and the development of asbestosis and a related lung cancer.

Under Louisiana law, a plaintiff claiming asbestos-related injury must prove "significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury." *Rando v. Anco Insulations Inc.*, 2008-1163, p. 35 (La. 5/22/09); 16 So. 3d 1065, 1091. Louisiana courts have applied this test to require evidence linking a plaintiff's injury to a defendant's asbestos-containing product. To defeat summary judgment, plaintiffs must point to evidence creating a genuine dispute as to whether Mr. Becnel was exposed to and injured by a product connected to either defendant.

To repeat, Plaintiffs must show general causation—that asbestos can cause primary lung cancer, and specific causation— that the decedent's exposure to defendants' products caused his primary lung cancer. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) ("General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury."). With respect to general causation, "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was

exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." *Id.* (quoting *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)). "A plaintiff in such a case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation." *Id.* A court may admit specific-causation evidence only after the plaintiff has produced admissible evidence on general causation. *See id.* ("[I]f it concludes that there is admissible general-causation evidence, the district court must determine whether there is admissible specific-causation evidence.").

As to causation, the Fifth Circuit has explained that, "[e]ven if the plaintiff was only exposed to asbestos for a 'short period for an employer[,] and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma.'" *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022) (quoting Rando, 16 So. 3d at 1091). To defeat an asbestos defendant's motion for summary judgment, a plaintiff "need only show that a reasonable jury could conclude that it is more likely than not that [plaintiff] inhaled defendant's asbestos fibers, even if there were only 'slight exposures.'" *Id.* (citing *Held v. Avondale Indus., Inc.*, 672 So. 2d 1106, 1109 (La. App. 4 Cir. 1996)). Drawing all reasonable inferences therefrom in favor of the non-moving party

15

here further supports the likelihood that, as with mesothelioma cancer, the extended cumulative inhalation of asbestos dust by Mr. Becnel was a contributing cause of his cancerous condition, i.e., lung cancer.

The substantive law that governs plaintiffs' claims is the law in effect when the alleged exposure occurred. *Rando*, 16 So. 3d at 1072. Relevant here is Louisiana products-liability law, which, prior to the enactment of the Louisiana Products Liability Act ("LPLA") in 1987, was summarized by the Louisiana Supreme Court in *Halphen v. Johns-Manville Sales Cor*p., 484 So. 2d 110 (La. 1986); *see also Adams v. Owens-Corning Fiberglas Corp.*, 2004-1589 (La. App. 1 Cir. 9/23/05), 923 So. 2d 118, *writ denied sub nom. Adams v. Owens-Corning Fiberglass Corp.*, 2005-2318 (La. 3/10/06), 925 So. 2d 519. Under Louisiana law, a plaintiff can recover against a manufacturer by proving that his injury was caused by a condition of the product existing at the time it left the manufacturer's control that rendered the product unreasonably dangerous in normal use. *Adams,* 923 So. 2d at 122; La. R.S. § 9:2800.54. This is a strict liability standard: "The plaintiff need not prove negligence by the maker in its manufacture or processing, since the manufacturer may be liable even though it exercised all possible care in the preparation and sale of its product." *Adams*, 923 So. 2d at 122. Prior to the enactment of the LPLA, Louisiana law also categorized some products, including asbestos, as

16

"unreasonably dangerous *per se*." *Halphen v. Johns-Manville Sales Corp.*, 484 So. 2d 110, 113-17 (La. 1986); *Hulin v. Fibreboard*, 178 F.3d 316, 334 (5th Cir. 1999); *see also Wagoner v. Exxon Mobil Corp.*, 813 F.Supp.2d 771, 793 (E.D. La. 2011) (retroactively applying the unreasonably dangerous per se theory of *Halphen* to a case where the decedent's claims against ExxonMobil arose out of work done in 1981 to 1983). "A product is unreasonably dangerous *per se* if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product." *Adams*, 923 So. 2d at 122. A manufacturer could be held liable for injuries caused by such a product even if the manufacturer did not know and reasonably could not have known of the danger. *Id.*

In *Halphen*, the Louisiana Supreme Court explained that, "[i]n order to recover from a manufacturer, the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous to normal use, and that the condition existed at the time the product left the manufacturer's control." 484 So. 2d at 113. At issue here is whether GE's product was "unreasonably dangerous," under any of the recognized theories of liability: (1) unreasonably dangerous in construction or composition, (2) unreasonably dangerous per se, (3) unreasonably dangerous in design, or (4) unreasonably dangerous for failure to warn. *See id.* at 113-15.

Plaintiffs have provided sufficient summary judgment evidence suggesting the decedent suffered substantial exposures from the defendants' manufactured vehicles, as well as their brake and clutch products. They point to several deposition excerpts from the decedent and his brother, Thomas Becnel. The decedent testified that for several decades, from 1958 through 1963, and again from 1967 through 2008, plaintiff-decedent worked as a mechanic in the Becnel garage. Rec. Doc. 512-5 at pp. 68-69 (Perpetuation Deposition of James Becnel); Rec. Doc. 512-4 at p. 222 (Discovery Deposition of James Becnel). He also declared that during those years, he and his brother worked with Bendix brakes, Rayloc brakes (which contained Abex friction lining), Ford brakes and vehicles, Volkswagen brakes and vehicles, Borg-Warner clutches, and BMW brakes and vehicles. Rec. Doc. 512-5 at pp. 85-86 (Perpetuation Deposition of James Becnel); Rec. Doc. 513-4 at pp. 458-59 (Discovery Deposition of James Becnel); 511-4 at p. 769 (Discovery Deposition of James Becnel).

Additionally, decedent's brother Thomas Becnel confirmed in his testimony that both he and the decedent performed brake and clutch jobs with all the defendants' products, referenced *supra*. Rec. Doc. 513-6 at pp. 23-24, 90-91, 95-96(Deposition of Thomas Becnel); Rec. Doc. 511-6 at pp. 28-29 (Deposition of Thomas Becnel); Rec. Doc. 512-6 at pp. 29-30, 67, 89-91 (Deposition of Thomas Becnel). The decedent also testified that while he performed

mechanic work with the various defendants' products, dust particles from the products "would fly all over." Rec. Doc. 513-5 at pp. 60-61 (Perpetuation Deposition of James Becnel). He further declared that he would sometimes have to grind down the brake linings using a piece of sandpaper, which would result in visible dust. *Id.* at 74-76. Plaintiff decedent would then have to clean-up the floor where the asbestos dust landed. *Id.* at 91.

Plaintiffs have also cited to the deposition testimonies of several corporate representatives, confirming the defendants' brake and/or clutch products contained asbestos. Rec. Doc. 513-8 at pp. 34-35 (Deposition of Borg-Warner, through Richard Anderson); Rec. Doc. 511-7 at pp. 31-32 (Deposition of BMW, through William Skully); Rec. Doc. 512-29 at pp. 8, 24, 90-91, 93, 156 (Deposition of Genuine Parts company, through Paul LeCour); Rec. Doc. 512-7 at pp. 98-99 (Deposition of Honeywell, through Gregory Bellopatrick); Rec. Doc. 512-31 at pp. 33-35, 50 (Deposition of Mark Taylor in *Norman*). For example, they point to the deposition testimony of Neal Palmer, the corporate representative of Volkswagen, who confirmed that Volkswagen beetles contained asbestos brakes and clutches. Rec. Doc. 513-7 at pp. 62-63 (Deposition of Volkswagen, through Neal Palmer).

i.   General Causation

Plaintiffs have provided sufficient support of general causation. They rely on the testimony of their experts, Dr. Stephen

Kraus and Dr. Rodney Landreneau. Rec. Docs. 511, 512, 513. Both
experts opine that exposure to chrysotile asbestos and other
asbestos fibers cause lung cancer. *See e.g.*, Rec. Doc. 513-11
(Affidavit of Stephen Kraus, M.D.); Rec. Doc. 513-25 (Declaration
of Dr. Rodney Landreneau). Furthermore, plaintiffs correctly show
that their experts' general causation opinions are based upon
published medical, scientific, and regulatory literature that are
consistent with reliable information showing potential harms
associate with exposures to chrysotile and amphibole forms of
asbestos fibers and cancer, including lung cancer.[5] *Wells v.
SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010)
("Although there are 'no certainties in science,' the expert must
present conclusions 'ground[ed] in the methods and procedures of
science.'" (alteration in original) (quoting *Daubert v. Merrell
Dow pharm., Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d
469 (1993) 113 S.Ct. 2786)). Additional support for the cumulative
effect of the movement of asbestos fibers through the body,
including the lymphatic system, and causes of disease on the
cellular level can be found in the expert report of Dr. Arnold

---

[5] *See* Rec. Docs. 511 at pp. 10-13, 512 at pp. 11-14, 513 at pp. 11-13; Exhibit
26 to Rec. Doc. 900, Millette, JR, et al. *Microscopy in the Investigation of
Asbestos-Containing Friction Products. The Microscope.* Vol. 68:3/4. 2020; *See
e.g.*, 513-27 (Consensus Report, Asbestos, asbestosis and cancer: The Helsinki
criteria for diagnosis and attribution. Scand J Work Environ Health 1997;
23:311-316); Rec. Doc. 900-38 (Markowitz, S. Asbestos-Related Lung Cancer and
Malignant Mesothelioma of the 85 Pleura: Selected Current Issues. Semin Respir
Crit Care Med. 2015; 36:334-346, at p. 339); Rec. Doc. 512-22 (Lemen RA et al.
Epidemiology of Asbestos-Related Diseases. Environmental Health 73
Perspectives. Vol. 34, pp. 1-11. 1980, at pp. 4-7).

Brody at record document 900, Exhibit 35. This and other evidence satisfy the criteria for general causation. *See Knight*, 482 F.3d at 351 ("general causation is whether a substance is capable of causing a particular injury or condition in the general population….").

    ii.  Specific Causation

Plaintiffs have also provided competent summary judgment evidence in support of specific causation. They rely on the testimony of their industrial hygienist, Frank Parker. Rec. Doc. 513-9 at pp. 21, 24 (Deposition of Frank Parker); Rec. Doc. 513-10 (Affidavit of frank Parker). Parker declared that the decedent was exposed to asbestos at significant levels that increased his risk of developing lung cancer due to his work on BMW and Volkswagen vehicles and use of the other defendants' brakes and clutches. *Id.* They also again cite to the declarations of Dr. Kraus and Dr. Landreneau. *See e.g.*, Rec. Doc. 513-11 (Affidavit of Stephen Terry Kraus, M.D.); Rec. Doc. 513-25 (Declaration of Dr. Rodney Landreneau). Both experts opine the decedent's asbestos exposure from the defendants' products were significant contributing factors in the development of his lung cancer. *Id.*

Considering all the evidence in the light most favorable to plaintiffs, there are genuine issues of material fact precluding summary judgment. Plaintiffs have pointed to reliable and sufficient evidence supporting the decedent's significant exposure

to the defendants' various asbestos and/or asbestos containing products. They have also provided sufficient summary judgment evidence establishing both general and specific causation.

Nevertheless, we must acknowledge that plaintiffs' experts' opinions, particularly that of Dr. Kraus and Dr. Landreneau, are duplicative and repetitive in nature. But, even if this Court were to grant defendants' various motions *in limine* and exclude the duplicative testimony of Dr. Landreneau, there would still be enough expert evidentiary support here to demonstrate a genuine issue of material fact.

As discussed supra, Dr. Kraus' opinions and references confirmed that exposures to chrysotile causes lung cancer, which satisfies the general causation prong. Parker's testimony satisfies the specific causation prong given his opinion that the decedent's exposure to significant levels of asbestos: (1) exceeded permissible exposure limits; and (2) increased his risk of developing lung cancer. Moreover, Dr. Kraus has opined that Mr. Becnel's exposures from the defendants' products were significant contributing factors in his development of lung cancer. Plaintiffs have provided sufficient expert causation evidence. Accordingly, the issue of whether each defendant's product was a substantial factor in bringing about the decedent's lung cancer is a question for the jury. Defendants' motions for summary judgment are **DENIED**.

New Orleans, Louisiana this 25th day of August, 2022

SENIOR UNITED STATES DISTRICT JUDGE